[No. A077483. First Dist., Div. Three. Feb. 3, 1998.]

Estate of BELVA C. P. SMITH, Deceased.
CHARLES SMITH, Petitioner and Appellant, v.
INDIA ROSE SMITH et al., Contestants and Respondents.

COUNSEL

Ian Sammis for Petitioner and Appellant.

Gregory C. Dyer for Contestants and Respondents.

OPINION

**PARRILLI, J.**—May a duly executed will be denied admission to probate based on a finding that the testator was mistaken as to how the will would dispose of her property? No. Mistake is a proper ground for contesting a will only if it negates testamentary intent, by showing the testator did not intend the document offered for probate to operate as a revocable disposition of her property effective upon her death.

This case arises on an appeal by Charles Smith from a judgment refusing to admit a statutory will with trust into probate.[1] The trial court found (1) the will was signed by mistake; (2) it was not shown that the testator knew and approved the will's contents and intended it to have testamentary effect; and (3) the testamentary intent reflected in the will was unclear. We reverse; the trial court's conclusions rest on a misapplication of standards governing the validity of statutory wills in circumstances not present here, and on an overly broad view of mistake as a basis for a will contest.

---

[1] The appeal was initiated by Taylor Smith, the decedent's husband and the proponent and sole beneficiary of the rejected will. Before briefing was complete, Taylor Smith died and his son Charles succeeded to his cause of action. (Code Civ. Proc., § 377.11.) Charles Smith is not related to contestant India Rose Smith, who is the decedent's daughter by an earlier marriage.

## BACKGROUND

Belva C. P. Smith died June 4, 1996, at the age of 83. On June 27, 1996, the decedent's daughter India Rose Smith filed a petition for probate of a holographic will dated April 30, 1982, which left the estate in equal shares to India Rose and her daughter Melissa. On August 12, 1996, the decedent's husband, Taylor Smith, filed a petition for probate of a statutory will with trust executed by the decedent. This will is not dated, but the first page of the form bears a notation indicating the form was revised in April 1985. The will is subscribed by two witnesses, Richard H. Carter and Linda C. Jones. The decedent signed the will in five places. On pages one and two she wrote her name on lines identifying the will as hers. She signed in the box provided for cash gifts, after writing "none" on the other lines in that box. She signed the property disposition clause, which gives all property other than personal and household items "To My Spouse If Living; If Not Living, Then in One Trust to Provide for the Support and Education of My Children and the Descendants of any Deceased Child Until I Have No Living Child Under 21 Years of Age."[2] The decedent signed again at the end of the document on the line for "Signature of Testator." She failed to identify any executors or trustees in the spaces provided for those purposes. Taylor Smith executed a reciprocal statutory will with trust in exactly the same manner as the decedent, and with the same witnesses' signatures.

The trial court held two hearings on the competing petitions for probate. Witnesses including India Rose, Melissa, and friends and neighbors of the decedent testified to her close relationship with India Rose and Melissa. On occasions as recent as 1988 or 1989 the decedent had expressed her intention to leave her estate to them. The decedent's mental faculties had declined in her later years and a conservatorship of the person was imposed on her in 1994 or early 1995. India Rose testified that the problems leading to the conservatorship began a few years before it was imposed. Melissa and other witnesses testified the decedent had problems with her memory beginning in 1988 or 1989.

Richard Carter, who witnessed the statutory wills executed by the decedent and her husband, was their tax preparer. He testified that he had no specific memory of witnessing the wills, but knew it was before June 30, 1992, when he moved his office. That was the last time his former secretary

---

[2]The form gives the testator no choice over the disposition of personal and household items; they go to the spouse if living, otherwise to surviving children in equal shares. The alternate residuary property disposition clause, not chosen by the decedent in this case, disinherits the spouse and leaves the estate to the testator's descendants in trust. (For the text of the statutory will with trust, see former Prob. Code, § 6241; Stats. 1990, ch. 79, § 14, p. 700; Stats. 1983, ch. 842, § 55, p. 3063.)

Linda Jones, the other subscribing witness, had worked for him. Carter thought the wills were probably executed sometime in 1988 or 1989.[3] He stated the decedent had no difficulty discussing her tax returns with him between 1988 and 1992. The first time he noticed her mental difficulties was in 1994, when he went to her home to prepare the couple's 1993 tax return.

The trial court made the following written findings and conclusions:

"3. BELVA SMITH had a loving relationship with her daughter and grand-daughter and she intended to leave them her part of the community property and her things. The granddaughter was raised in the decedent's home for the first six (6) years of her life.

"4. The 1982 will made it very clear that the Decedent was not leaving anything to her spouse other than her spouse's community property portion of the house.

"5. The very first declaration of information and notice to a person who would sign the will form offered by TAYLOR SMITH is that the form contains a trust for descendants. A spouse is not a descendant.

"6. A lay person would look at the form and believe that the use of the form would create some kind of a trust for her descendants. This is consistent with the 1982 will which disinherited the spouse and gave everything to the daughter and granddaughter.

"7. The statutory will form is confusing to a lay person. The first words after the title are 'NOTICE TO THE PERSON WHO SIGNS THIS WILL: THIS FORM CONTAINS A TRUST FOR YOUR DESCENDANTS. IF YOU DO NOT WANT TO CREATE A TRUST, DO NOT USE THIS FORM.' The form contains language that the property goes to the spouse, if living, and if not, then to the children under age 21. Neither Decedent nor her spouse had any children under the age of 21 and this provision makes absolutely no sense in this situation. The statutory will form offered by TAYLOR SMITH was signed by mistake by the Decedent.

"8. This purported will is not dated. It does not have an executor. These are important attributes of a testamentary document. There are a large number of blanks of the form that are not filled in.

---

[3]Carter's testimony on this point was ambiguous. After stating the will was definitely executed before the middle of 1992, he said: "It probably had to be, to the best of my knowledge, it had to be somewhere between 1988 and that period, '89, along there. I really don't honestly know the exact date." This might mean between 1988 and 1992, or between 1989 and 1992, or between 1988 and 1989. The latter interpretation is supported by a declaration filed in connection with the petition to admit the statutory will to probate, in which Carter stated he had witnessed the will in his office "[s]ometime in 1988 or 1989."

"IT IS ADJUDGED, ORDERED, AND DECREED AS FOLLOWS:

"The purported statutory will form offered by TAYLOR SMITH is denied admission to probate because: (1) it was signed by mistake, (2) the court is not satisfied that Decedent knew and approved of the contents of the will and intended it to have testamentary effect and (3) the testamentary intent of the Decedent as reflected in the document is not clear."

The court admitted the 1982 holographic will into probate. This appeal followed.

## DISCUSSION

■ We independently review questions regarding construction of the will's terms. We must accept the trial court's findings if they are based on the credibility of extrinsic evidence, or resolve a conflict in that evidence. However, the trial court's findings are not binding on us if there is no conflict in the extrinsic evidence, or if that evidence is incompetent to support the findings. (*Newman* v. *Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969]; *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Estate of Russell* (1968) 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].)

■ In a will contest, the issues are limited to those concerning whether the document at issue is or is not the testator's duly executed, valid will. The court does not ordinarily reach such matters as inconsistencies in the disposition of property or interpretation of the testamentary provisions. The power to construe the provisions of the will is exercised only when needed to determine the will's status as a testamentary instrument. (*Estate of Cuneo* (1963) 60 Cal.2d 196, 206 [32 Cal.Rptr. 409, 384 P.2d 1, 7 A.L.R.3d 1132]; *Estate of Neubauer* (1958) 49 Cal.2d 740, 747 [321 P.2d 741]; *Estate of Salmonski* (1951) 38 Cal.2d 199, 207 [238 P.2d 966]; *Estate of Plaut* (1945) 27 Cal.2d 424, 427 [164 P.2d 765, 162 A.L.R. 837]; *Estate of Cumming* (1979) 96 Cal.App.3d 867, 872-873 [158 Cal.Rptr. 263].) A document's status as a testamentary instrument depends on the testator's intent.

"Before an instrument may be probated as a will it must appear from its terms, viewed in the light of the surrounding circumstances, that it was executed with testamentary intent. The testator must have intended, by the particular instrument offered for probate, to make a revocable disposition of his property to take effect upon his death. [Citations.] It bears emphasis that we are here concerned not with the meaning of the instrument, but with the intention with which it was executed. Regardless of the language of the

allegedly testamentary instrument, extrinsic evidence may be introduced to show that it was not intended by the testator to be effective as a will. [Citations.] Thus, an instrument that clearly appears testamentary may nevertheless be shown by extrinsic evidence to have been executed in jest [citations], or as a threat to induce action by an interested party [citation], or under the misapprehension that the instrument was a mortgage [citation], or to induce the 'legatee' to engage in illicit relations with the testator [citation], or to relieve the maker from annoyance by a would-be legatee. [Citations.]" (*Estate of Sargavak* (1950) 35 Cal.2d 93, 95-96 [216 P.2d 850, 21 A.L.R.2d 307]; see also *Estate of MacLeod* (1988) 206 Cal.App.3d 1235, 1240-1241 [254 Cal.Rptr. 156].)

■ Here, the trial court concluded the statutory will was executed by mistake, after considering the will's terms and the instructions accompanying it, as well as the provisions of the earlier holographic will and the testimony of witnesses. However, none of the extrinsic evidence considered by the court tended to show the decedent did not intend the statutory will to be effective as a testamentary instrument. Extrinsic evidence was only relevant and admissible "if offered for the purpose of ascertaining the intent with which the instrument was executed [citations], and not for the purpose of proving the meaning the testator attributed to specific provisions" of the will. (*Estate of Sargavak, supra*, 35 Cal.2d at p. 97.) Thus, the trial court's factual findings regarding the decedent's intention to leave her estate to her daughter and granddaughter do not support its decision to deny the statutory will admission to probate.

■ The trial court focused on the decedent's intended disposition of her estate, instead of on her intent to execute a testamentary instrument, because the court mistakenly considered itself bound by requirements for reviewing the execution of statutory wills provided in Probate Code, section 6226, subdivision (c).[4] These requirements substantially alter the usual scope of the inquiry in a will contest, but do not apply to a properly witnessed statutory will, or to any statutory will with trust, as we explain below. The contestants raised the issue of due execution, but then effectively abandoned it during the proceedings. However, due to the impact of section 6226, subdivision (c) on the trial court's reasoning, we discuss due execution before considering mistake, the other ground for denying probate asserted by the contestants. The contestants never alleged mental incapacity, undue influence, fraud, duress, or revocation.

1.  *Due Execution*

The statutory will with trust form used by the decedent, formerly set out in section 6241, was repealed by the Legislature in 1991. (Stats. 1991, ch.

---

[4]Further statutory references are to the Probate Code unless otherwise specified.

1055, § 19, p. 4883.) Currently "[t]here is only one California statutory will" (§ 6223, subd. (a)), which is provided by section 6240 and includes no trust provisions. However, a "California statutory will with trust executed on a form allowed under prior law shall be governed by the law that applied prior to January 1, 1992." (§ 6223, subd. (c).) The contestants in this case argued at the outset that the decedent's failure to fill in all the appropriate blanks did not comply with section 6221, subdivision (a), which both before and after 1992 stated: "The testator shall complete the appropriate blanks and shall sign the will." (Stats. 1990, ch. 79, § 14, p. 693; Stats. 1983, ch. 842, § 55, p. 3057.) Under section 8252, subdivision (a), "the proponents of the will have the burden of proof of due execution."

Before the hearings were completed, however, the Court of Appeal, Fifth Appellate District, published its decision in *Estate of Perry* (1996) 51 Cal.App.4th 440 [58 Cal.Rptr.2d 797], the first case authority on California statutory wills. (*Id.* at p. 443.) In *Perry*, someone other than the testator had filled in the blanks on a statutory will, although the will appeared to be properly signed and witnessed. Reversing a grant of summary judgment to the contestants, the court ruled that a statutory will failing to meet the requirements of section 6221 may still be admitted to probate if it complies with the general requirements for execution of wills provided in section 6110 (a writing, signed by the testator or by another at his direction, with the signatures of two witnesses). (*Estate of Perry, supra,* 51 Cal.App.4th at pp. 444-445.)

Under section 6226, subdivision (c), added in 1991, a California statutory will is valid "[n]otwithstanding Section 6110 . . . if all of the following requirements are shown to be satisfied by clear and convincing evidence: [¶] (1) The form is signed by the testator. [¶] (2) The court is satisfied that the testator knew and approved of the contents of the will and intended it to have testamentary effect. [¶] (3) The testamentary intent of the maker as reflected in the document is clear." The *Perry* court noted two ways in which this provision reflects a legislative intent not to exclude statutory wills from the purview of section 6110. First, if section 6110 did not apply to statutory wills, the Legislature would not have created a specific exemption from its requirements in section 6226, subdivision (c). Second, section 6226, subdivision (c) is more lenient than section 6110 in that a will signed only by the testator, with no witnesses, may qualify for probate if the court is satisfied by clear and convincing evidence that the will expresses the testator's intent. "We see no reason to infer that the Legislature intended to deny probate when the will was properly signed and witnessed, but the testator did not personally complete the form's blanks." (*Estate of Perry, supra,* 51 Cal.App.4th at pp. 445-446.)

The contestants in our case filed a supplemental brief in the trial court, conceding that *Perry*, if it became final, would resolve their objection based

on lack of compliance with section 6221. However, they pointed out their primary objection had always been that the decedent executed the statutory will by mistake and never intended to disinherit her daughter and grand-daughter by leaving her entire estate to her husband if he survived her. The trial court discussed *Perry* in an oral statement of decision at the close of the last hearing.[5] In light of *Perry*'s holding, the court declined to rest its decision on the decedent's failure to fill in all the blanks on the statutory will form, although the court noted that *Perry* did not involve a will lacking a date and naming no executor. But the court believed that under *Perry* "the Court has to be satisfied by clear and convincing evidence of the Testator's intent." The court found no clear and convincing evidence showing that "the Testator intended not to leave anything to her daughter in the face of the witnesses and testimony heard by this Court and the consideration of the prior testamentary device." The court deemed the statutory will with trust "confusing and misleading," because the form would lead a lay person to believe the spouse would have the use of the decedent's assets while the spouse was alive, then they would go to the children. Hence, the court concluded the decedent's will "clearly evidences an intent to provide her assets to her husband and then to her children."

The court's written findings do not refer to the clear and convincing evidence standard provided in section 6226, subdivision (c). However, the written order denying admission of the statutory will to probate closely tracks the requirements of the statute. Subdivision (c)(1) requires the testator to sign the form; the court found the decedent signed the form by mistake. Subdivision (c)(2) requires the court to be "satisfied that the testator knew and approved of the contents of the will and intended it to have testamentary effect;" the court stated it was not so satisfied. Subdivision (c)(3) requires the will to clearly reflect the maker's testamentary intent; the court found the decedent's testamentary intent as reflected in the statutory will was not clear.

The court should not have applied the standards set out in section 6226, subdivision (c). The *Perry* decision indicates this provision's requirement of findings by clear and convincing evidence applies only to a statutory will that fails to meet the witness requirements of section 6110. Nowhere did the *Perry* court suggest that a statutory will meeting the requirements of section 6110 must also meet those of section 6226, subdivision (c). Nor is such an interpretation supported by the terms of section 6226, subdivision (c), which provide an exception to the general rules of section 6110, not a set of new

---

[5]In response to the proponent's request for a written statement of decision, the court stated its findings would be oral because the hearings amounted to less than a full day. (See Code Civ. Proc., § 632 [statement of decision may be oral when trial lasts less than eight hours].) Nevertheless, the court's written order also included findings of fact and conclusions of law.

standards for determining the validity of all statutory wills. "Except as specifically provided in [the statutory will statutes], the general law of California applies to a California statutory will." (Former § 6248 [amended Stats. 1984, ch. 892, § 38, p. 2998], now § 6243.) More fundamentally, however, section 6226, subdivision (c) cannot govern the validity of the will in this case because it did not take effect until after the Legislature repealed the statutory will with trust form. A statutory will with trust meeting the requirements of prior law is "governed by the law that applied prior to January 1, 1992." (§ 6223, subd. (c); see also § 6242, subd. (c).)

The fact that section 6226, subdivision (c) did not coexist with the statutes authorizing the statutory will with trust does not change the rule announced in *Perry*, that a statutory will may qualify for probate under section 6110 even if it is defective under section 6221. Since its enactment in 1983, section 6113 has provided that a written will is formally acceptable "if its execution complies with *any* of the following: [¶] (a) The will is executed in compliance with Section 6110 or 6111 *or* Chapter 6 (commencing with Section 6200) (California statutory will) . . . ." (Italics added; see Stats. 1983, ch. 842, § 55, p. 3050; Stats. 1990, ch. 79, § 14, p. 685.) Thus, even without considering the *Perry* decision the trial court should have accepted the contestants' concession that their objection based on failure to comply with section 6221 was unsupportable. Neither a date nor a designated executor is required for a will to be duly executed under section 6110.[6]

## 2. *Mistake*

The contestants had the burden of proving mistake. (§ 8252, subd. (a).) There is not much California authority on mistake as a ground for a will contest. Unlike the other grounds mentioned in section 8252, subdivision (a), mistake is not discussed in other provisions of the Probate Code. (See, e.g., §§ 6110 et seq. [due execution]; 6100.5 [mental incompetence]; 6104 [duress, fraud, and undue influence]; 6120 et seq. [revocation].) The case law is sparse. ▮▮▮ The contestants argued to the trial court that the decedent mistakenly executed the statutory will with trust, because she never intended to disinherit her daughter and granddaughter. They contended the decedent thought she was creating a trust for her spouse for life, with the remainder of her estate going to her descendants. The contestants have cited no authority for this kind of mistake as a ground for denying probate, either below or in

---

[6]Holographic wills were formerly required to be dated, but the Legislature abolished the requirement in 1982. (See former § 53, repealed by Stats. 1982, ch. 187, § 2, p. 570; 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 207, p. 243.) While a date is certainly a normal feature of a witnessed will, it has never been a legal requirement.

The Probate Code contemplates appointment of a personal representative by the court when a will fails to name an executor. (§ 8440.)

this court. Their view finds support neither in the law nor in the terms of the statutory will executed by the decedent.

In *Estate of Carson* (1920) 184 Cal. 437 [194 P. 5, 17 A.L.R. 239], the decedent left the bulk of her estate to a man she had married a year before her death. The contestants alleged this man had falsely led the decedent to believe he was free to marry her, when in fact he was married to another woman. They attacked the will on the grounds of fraud and undue influence. (*Id.* at p. 439.) The court reversed a judgment of nonsuit against the contestants, holding their evidence of fraud was sufficient to reach the jury. (*Id.* at p. 443.) However, the court rejected the contestants' argument that even if there had been no misrepresentation and the decedent was merely mistaken regarding her suitor's eligibility, such a mistaken belief alone would invalidate the will. "This, of course, cannot be true. Mere mistake, which does not in effect show a want of execution of the will or, what is the same thing, a want of testamentary intent as to a portion of it, is not a ground of contest." (*Id.* at p. 447.)

Thus, a mistake by the testator does not preclude admission of a will to probate unless the mistake vitiates the execution of the will or the formation of testamentary intent. "Testamentary intent" in this context does not refer to the testator's intentions regarding particular dispositions of property. It means the testator's general intent to make a revocable disposition of his or her property, effective on the testator's death. (*Estate of Sargavak, supra,* 35 Cal.2d 93, 95-96; *Estate of MacLeod, supra,* 206 Cal.App.3d 1235, 1240-1241.) An example of a mistake affecting testamentary intent was noted by our Supreme Court in *Sargavak*—execution of an apparently testamentary instrument under the misapprehension that the document is a mortgage. (35 Cal.2d at p. 96.) ▪ California law on this point follows the common law rule: "The general rule in the absence of statute is that the validity of a will or any part of it is not affected by a mistake of either law or fact inducing the execution of the will, unless fraud or undue influence was perpetrated upon the testator or the mistake involves a want of testamentary intent, as where the testator executed the wrong instrument. A will should not be denied probate merely because the testator was mistaken in his appreciation of the effect of the language thereof." (79 Am.Jur.2d, Wills, § 415, pp. 568-569, fns. omitted.)

The policy supporting this restrictive approach to mistake as a ground for a will contest was discussed in *Estate of Strong* (1966) 244 Cal.App.2d 250 [52 Cal.Rptr. 919], although *Strong* was not a will contest but a proceeding to determine heirship. There the brother of the testator challenged a bequest to the testator's granddaughter on the ground that her blood relationship to

the testator was uncertain. The court declared, "[e]ven a demonstrated mistaken belief, which is much stronger than an uncertainty, does not necessarily vitiate a devise." (*Id.* at p. 255.) After stating the rule that mistake as to family relationship generally is no ground for defeating a bequest, the court noted "the somewhat broader public policy enunciated in *In re Gluckman's Will*, 87 N.J.Eq. 638, 641 . . . : '. . . it is against sound public policy to permit a pure mistake to defeat the duly solemnized and completely competent testamentary act. It is more important that the probate of the wills of dead people be effectively shielded from the attacks of a multitude of fictitious mistakes than that it be purged of wills containing a few real ones. The latter a testator may, by due care, avoid in his lifetime. Against the former he would be helpless.' " (*Estate of Strong, supra*, 244 Cal.App.2d at p. 256.)

It is readily apparent that if a will could be barred from probate based on a mistake inferred from divergent provisions of a prior will, and from witnesses' testimony regarding the testator's conversational statements that she was leaving her property to certain heirs, a great deal of uncertainty would be introduced into probate proceedings and the security of testators in the disposition of their estates by will would be significantly unsettled. The trial court's reliance on such evidence in this case violated long-established principles of probate law. " 'The intention of the transferor *as expressed in the instrument* controls the legal effect of the dispositions made in the instrument.' (§ 21102, subd. (a).) ' "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator *as expressed therein*, and this intention must be given effect as far as possible." (*Estate of Wilson* (1920) 184 Cal. 63, 66-67 [193 P. 581].) . . . .' " (*Newman v. Wells Fargo Bank, supra*, 14 Cal.4th 126, 134, italics added.)

The statutory will signed by the decedent strongly supports the conclusion she decided to alter the distributions made in her earlier holographic will. The statutory will revoked prior wills in article 1, and the decedent placed her signature immediately above the revocation clause. The provisions executed by the decedent and her husband unambiguously express a mutual intent to leave their estates to whichever of them survived the other: "TO MY SPOUSE IF LIVING; IF NOT LIVING, THEN IN ONE TRUST . . . ." These terms cannot reasonably be construed to provide for the estate to go to the spouse only temporarily, and then to the children after the spouse's death. "If living" and "if not living" are clearly alternative conditions, not sequential ones. (See *Estate of Woehr* (1958) 166 Cal.App.2d 4, 15 [332 P.2d 818] [rejecting claim of lack of due execution that was based on testator's alleged confusion over effect of clause stating "or if one be deceased to the

survivor"].) Nor could the decedent have thought she was creating a trust for the benefit of her spouse by employing language establishing ". . . One Trust to Provide for the Support and Education of My Children . . . ."

The fact that the form chosen by the decedent and her husband created a trust for children under the age of 21, although neither of them had any such children when they executed their wills, has no bearing on whether the decedent executed the statutory will with testamentary intent. It is also irrelevant to the ultimate disposition of her property under the will, since her spouse survived her and was therefore the sole beneficiary under the will's plain terms.[7] The contestants failed to carry their burden of showing the decedent executed the statutory will by a mistake that affected its status as a testamentary instrument. The trial court should have admitted that will to probate.

## Disposition

The judgment is reversed. Appellant shall recover his costs on appeal.

Corrigan, Acting P. J., and Walker, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 27, 1998.

---

[7] A statutory will with trust is not ineffective even if the testator is the surviving spouse but has no children who qualify as beneficiaries. The residuary estate goes to the testator's surviving descendants if neither the spouse nor any child under 21 survives the testator. (Former § 6244, subd. (a)(3); Stats. 1990, ch. 79, § 14, p. 706; Stats. 1983, ch. 842, § 55, p. 3070.)