[No. G033641. Fourth Dist., Div. Three. Jan. 27, 2005.]

OLEN COMMERCIAL REALTY CORP. et al., Plaintiffs and Appellants, v. COUNTY OF ORANGE, Defendant and Respondent.

COUNSEL

Wendy W. Huang for Plaintiffs and Appellants.

Benjamin P. de Mayo, County Counsel, and Laurie A. Shade, Deputy County Counsel, for Defendant and Respondent.

OPINION

**MOORE, J.**—Plaintiffs and appellants Olen Commercial Realty Corp. and Olen Commercial Realty Encumbrance I. Corp. (collectively Olen) appeal from an adverse judgment on its action for refund of property taxes and request for declaratory relief against defendant and respondent County of Orange (County). We affirm the judgment. On July 22, 2004, Olen filed a motion to augment the record with the following designated documents previously filed in the superior court: "1. Appellant's Opening Trial Brief and exhibits thereto (Item 3), filed on September 5, 2003; [¶] 2. Respondent's Response Brief (Item 8), filed on September 19, 2003; [¶] 3. Appellant's Reply Brief (Item 10), filed on October 1, 2003; and [¶] 4. Declaration of Thomas Pike (Item 11), filed on October 1, 2003." For reasons discussed below, we grant the motion to augment with respect to documents numbered 1, 2, and 3, and deny the motion with respect to document number 4.

I

FACTS

Olen began construction on a commercial real estate project in Brea, California in 1997. The project consisted of two 5-story buildings and a parking garage located at 40, 50, and 60 North Pointe Drive in the City of Brea, Orange County, California. The first building was completed and ready for occupation on April 1, 1998. In January 1999, the second building was completed and ready for occupation.

In 1999, the Orange County Assessor's office (Assessor) issued supplemental property tax assessments on the property. Olen filed two applications for changed assessment for roll years 1997 (No. 99-004972) and 1998 (No. 99-004973) with the Assessment Appeals Board (Board). The Board convened for portions of four days in 2001, January 29, March 13, April 11, and May 10, for the equalization hearing. Its decision was filed in July 2001 and included the following pertinent findings: (1) the full cash value of the property as of January 1, 1997 was $40,786,067, a supplemental value of $35,000,000, and (2) the full cash value of the property as of January 1998

was $40,908,759, a supplemental value of $24,316,618. The Board found that the "Assessor relied upon an income approach, cost analysis, comparative sales/market appraisal approach to arrive at [its] opinion of value . . . ."

Olen filed a claim for refund with the Orange County Board of Supervisors, which the supervisors denied by operation of law. On July 29, 2002, Olen filed a complaint for refund of property taxes in the Orange County Superior Court. The complaint alleged the County overstated the fair market value of the property. Olen contended the property's value in 1997 was $13,433,767, and its value in 1998 was $22,402,856. Based on these figures, Olen argued it was entitled to a tax refund of $212,463.12.

The parties appeared for trial on October 16 and December 18, 2003. The trial court addressed substantially the same issues Olen now raises on appeal. The parties stipulated the Assessor made an error in concluding both buildings were completed in April 1998. Olen admitted it had received a partial refund of $63,323.28 based on this error. On January 2, 2004, the court entered judgment in favor of the County. The court's ruling set forth the following findings: "1. The valuation method used by the County and adopted by the Assessment Appeals Board was not arbitrary, in excess of discretion or in violation of the standards prescribed by law; [¶] 2. There is substantial evidence in the Administrative Record to support the Assessment Appeals Board's decision in favor of the County; [¶] 3. Plaintiff's complaint for Refund of Property Taxes is dismissed with prejudice; and [¶] 4. [Plaintiffs] recover nothing from Defendant County of Orange." Olen filed its notice of appeal on February 27, 2004.

## II

## DISCUSSION

The focus of Olen's appeal is the Assessor's valuation of its property, which will be the subject of a lengthy discussion. Other issues not directly related to the Assessor's valuation are individually addressed below.

*Valuation*

■ Olen raises a number of challenges to the County's valuation of its property. In such cases, the standard of review depends upon which of two issues is raised by the appellant. "Where a taxpayer challenges the validity of the valuation method used by an assessor, the trial court must determine as a matter of law 'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.' [Citation.] Our review of such a question is de novo. [Citation.] By contrast,

where the taxpayer challenges the application of a valid valuation method, the trial court must review the record presented to the Board to determine whether the Board's findings are supported by substantial evidence but may not independently weigh the evidence. [Citations.] This court, too, reviews a challenge to application of a valuation method under the substantial evidence rule. [Citation.]" (*Freeport-McMoran Resource Partners v. County of Lake* (1993) 12 Cal.App.4th 634, 640 [16 Cal.Rptr.2d 428].)

The majority of Olen's contentions challenge the comparable sales approach. Olen first contends the comparable sales approach should not have been used because the cost approach to valuation "is the only approach available to value improvements." We disagree.

■ In general, tax assessors use three basic appraisal methods to determine the full value of property: (1) the market data or comparable sales method; (2) the income or capitalization method; and (3) the cost method. (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354]; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Taxation, § 178, p. 216.) ■ "Under the market data method the assessor examines and correlates the prices resulting in other transactions involving comparable properties [citation]; the validity of this method rests upon the assumption that comparable properties have comparable full cash values." (*Bret Harte Inn, Inc. v. City and County of San Francisco, supra,* 16 Cal.3d at p. 24.) "Under the income method the assessor capitalizes the sum of future income attributable to the property, less an allowance for the risk of partial or no receipt of income [citation]. The income method rests upon the assumption that in an open market a willing buyer of the property would pay a willing seller an amount approximately equal to the present value of the future income to be derived from the property." (*Ibid.*) The cost method "uses the cost of property as a basis for valuation. [Citations.]" (9 Witkin, Summary of Cal. Law, *supra,* Taxation, § 178, pp. 216–217.)

■ California Code of Regulations, title 18, section 3 requires the assessor to consider "one or more" of the methods to arrive at the full value of the property. Here, the Assessor arrived at its valuation using all three methods of valuation. Olen is not challenging the validity of the methods of valuation used by the Assessor. Rather, it challenges the application of the comparable sales approach to its case. Therefore, the proper standard of review *is* sufficiency of the evidence. After a review of the record, we conclude the trial court's judgment withstands review under this standard.

Section 4 of title 18 of the California Code of Regulations provides: "When reliable market data are available with respect to a given real property, the preferred method of valuation is by reference to sales prices. In using sales prices of the appraisal subject or of comparable properties to value a property, the assessor shall: [¶] (a) Convert a noncash sale price to its cash equivalent by estimating the value in cash of any tangible or intangible property other than cash which the seller accepted in full or partial payment for the subject property and adding it to the cash portion of the sale price and by deducting from the nominal sale price any amount which the seller paid in lieu of interest to a lender who supplied the grantee with part or all of the purchase money. [¶] (b) When appraising an unencumbered-fee interest, (1) convert the sale price of a property encumbered with a debt to which the property remained subject to its unencumbered-fee price equivalent by adding to the sale price of the seller's equity the price for which it is estimated that such debt could have been sold under value-indicative conditions at the time the sale price was negotiated and (2) convert the sale price of a property encumbered with a lease to which the property remained subject to its unencumbered-fee price equivalent by deducting from the sale price of the seller's equity the amount by which it is estimated that the lease enhanced that price or adding to the price of the seller's equity the amount by which it is estimated that the lease depressed that price. [¶] (c) Convert a sale to the valuation date of the subject property by adjusting it for any change in price level of this type of property that has occurred between the time the sale price was negotiated an the valuation date of the subject property. [¶] (d) Make such allowances as he [or she] deems appropriate for differences between a comparable property at the time of sale and the subject property on the valuation date, in physical attributes of the properties, location of the properties, legally enforceable restrictions on the properties' use, and the income and amenities which the properties are expected to produce. When the appraisal subject is land and the comparable property is land of smaller dimensions, and it is assumed that the subject property would be divided into comparable smaller parcels by a purchaser, the assessor shall allow for the cost of subdivision, for the area required for streets and alleys, for selling expenses, for normal profit, and for interest charges during the period over which it is anticipated that the smaller properties will be marketed."

Olen first contends the Assessor failed to make the mandatory adjustments to the comparable sales approach. However, the Assessor supplied the Board with a chart listing 10 items for which adjustments had been made and testified at length regarding each adjustment. Nothing in the record supports Olen's contention to the contrary.

Olen next argues the Assessor's analysis improperly compared sales of land with buildings to his building-only project. He believes the "value of the land is irrelevant" because the land was purchased over 25 years ago before the passage of Proposition 13. However, "[w]hen applied to real property, the words 'full value', 'full cash value', 'cash value', 'actual value' and 'fair market value' mean the price at which the unencumbered or unrestricted fee simple interest in the real property (subject to any legally enforceable governmental restrictions) would transfer for cash or its equivalent . . . ." (Cal. Code Regs., tit. 18, § 2.) Under these circumstances, the value of the land is relevant to comparable sales of improved land. Further, the Assessor provided documentary evidence and testimony subtracting the land value from the value of the building. Thus, the Board had ample evidence to consider the value of Olen's building project in isolation had it chosen to do so.

Olen also argues the Assessor improperly failed to convert noncash sales of the comparables used in its analysis to their cash equivalent. The Assessor testified, "Sales under, all of these sales were either all cash sales or sales that had a down payment with a new loan. And under a cash equivalency analysis you would look to the loan to see if the loan is at or below or above market value. When they go on obtaining a new loan, I have yet to see a lender give a loan to somebody at or above market, excuse me, below or above market, a new loan by definition is at market value. So there is no cash equivalency necessary for these three sales." Olen fails to explain how the Assessor should have converted cash sales to their cash equivalent.

Citing Revenue and Taxation Code section 402.5, Olen next claims the Assessor failed to use sales near in time to the lien date. That section provides, "When valuing property by comparison with sales of other properties, in order to be considered comparable, the sales shall be sufficiently near in time to the valuation date, and the properties sold shall be located sufficiently near the property being valued, and shall be sufficiently alike in respect to character, size, situation, usability, zoning or other legal restriction as to use unless rebutted pursuant to Section 402.1, to make it clear that the properties sold and the properties being valued are comparable in value and that the cash equivalent price realized for the properties sold may fairly be considered as shedding light on the value of the property being valued. 'Near in time to the valuation date' does not include any sale more than 90 days after the lien date."

The Assessor used three comparable sales. The first occurred in September 1997 and involved a property in Irvine. The second occurred in June 1998 and involved an Anaheim property. The third sale involved property in Laguna Niguel and occurred in August 1997. The lien date of the subject property is January 1999. Thus, none of the sales occurred more than 90 days *after* the lien date. Olen conceded this issue at the Board hearing after the County's representative explained the rule: "It [Rev. & Tax. Code, § 402.5] does say that and I just read it, I was not I missed the after, but clearly if it's the year prior there has to be an adjustment made for that, but here it hasn't been made." Actually, the record reflects the Assessor did make numerous adjustments to the comparable sales that account for variations between the properties at issue.

Olen also argues the Assessor failed to make adequate adjustments for differences in the physical attributes, location, income and amenities of the properties. Again, the record does not support this assertion. California Code of Regulations, title 18, section 4 provides that the assessor "Make such allowances as he [or she] deems appropriate for differences between a comparable property at the time of sale and the subject property on the valuation date . . . ." In the present case, the variations in physical attributes, location, income and amenities of each sale were listed in the Assessor's documentation, and the documents demonstrate adjustments were made to equalize the respective values of the subject properties. By contrast, nothing in the record supports Olen's assertion the Assessor's valuation was somehow arbitrary, in excess of discretion, or in violation of the law. (*Bret Harte Inn, Inc. v. City and County of San Francisco, supra,* 16 Cal.3d at p. 23.)

Olen also contends the Assessor failed to apply mandatory adjustments regarding variances in the number of parking stalls between the properties and its building. The Assessor used a parking ratio of 4.0 in its comparative analysis. At the hearing, Olen contended the City of Brea mandates a parking ratio of 3.0 and that the lower ratio reduced the value of its property. Olen did not submit evidence to support this assertion.

In superior court, Olen submitted a declaration from Thomas Pike, a real estate appraiser, who utilized a parking ratio of 3.3 in analyzing three additional comparable sales. The superior court excluded evidence of the Pike declaration on the ground it had not been submitted to the Board. This declaration is now one of four documents submitted with Olen's motion to augment the record.

Pursuant to California Rules of Court, rule 12(a), "(1) At any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include: [¶] (A) any document filed or lodged in the case in superior court; or [¶] (B) a certified transcript—or agreed or settled statement—of oral proceedings not designated under rule 4." The Pike declaration was filed with the superior court on October 1, 2003. Nevertheless, the County opposes Olen's motion to augment the record with the Pike declaration, arguing it was properly excluded by the trial court and is otherwise not relevant to the appeal.

Olen's motion to augment is not well taken with respect to the Pike declaration. In reality, Olen attempts to challenge on appeal the trial court's evidentiary ruling, which should have been the subject of a timely objection below. Instead, Olen's trial counsel agreed with the trial court's ruling: "Although we would like it to be considered as evidence, we recognize that we need to show extraordinary circumstances to be able to bring addition evidence at a hearing before the court that is reviewing something that was not placed before the Board." Counsel further agreed extraordinary circumstances were not shown in this case. Therefore, the motion to augment is denied with respect to the Pike declaration.[1]

█ Nevertheless, assuming this court considered the Pike declaration, the trial court's decision remains unassailable. "[E]xtra-record evidence can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 579 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) With or without the Pike declaration, the Board's decision is supported by substantial evidence. █ A mere conflict in evidence does not mandate reversal of a judgment otherwise supported by reasonable, competent evidence.

Olen next states the Assessor failed to make mandatory adjustments to its land value comparables. Olen provides no citation to the record in support of this assertion. The entire argument relies on facts stated in the Pike declaration but not provided to the Board. Nothing in the record supports Olen's argument, nor is it clear the admission of such evidence would have altered the result.

---

[1] Olen's motion to augment the record is unopposed with respect to the documents designated "Appellant's Opening Trial Brief and exhibits," "Respondent's Response Brief," and "Appellant's Reply Brief." Therefore, the motion to augment the record is granted as to these documents.

Olen also contends the Assessor failed to provide a sufficient number of verified sales comparables. At the hearing, Olen submitted a photocopy of page 88 of the Assessor's Handbook. Under the heading "Number of Sales," the handbook provides, "The number of sales needed depends on the comparability of the sales to the subject property. If the subject is a house in a subdivision of similar houses, then three of four sales of closely comparable houses are usually sufficient. If closely comparable sales cannot be found, for example, as with some industrial properties, then additional comparable sales will be needed. In some cases, the appraiser may need to investigate a large number of sales just to find three or four comparables." From this paragraph, Olen concludes, "since none of the purported sales comparables offered by the Assessor are even located in the same city as the Improvements, the Assessor should have provided more than (3) purported sales to the Appeals Board." Whatever the desirability of using more than three comparable sales in these circumstances, nothing supports Olen's contention additional sales were mandated by the Assessor's Handbook.

Finally, Olen argues the trial court committed reversible error by not concluding the Board's findings were defective and invalid as a matter of law. We disagree. There is no basis for a reversal of the court's judgment. We have reviewed over 365 pages of hearing transcript, over 50 exhibits submitted by both sides, and the portion of the clerk's transcript submitted by the parties. Under the substantial evidence standard of review, we conclude the trial court's decision must be affirmed.

*Statement of Decision*

Olen contends the trial court committed reversible error by refusing to issue a written statement of decision. We disagree.

Code of Civil Procedure section 632 provides: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested the statement, any party may make proposals as to the content of the statement of decision. [¶] *The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when*

*the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties."* (Italics added.)

■ Prior to trial, Olen submitted a written request for statement of decision. This request consisted of 16 purportedly "principal controverted issues." In truth, Olen's request sought to compel the trial court to make detailed evidentiary findings. However, detailed evidentiary analysis is not required by law. (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 764 [164 Cal.Rptr. 727].) Therefore, Olen presented the court with a defective request for statement of decision that it did not need to adopt. Further, although Olen argues the court failed to comply with Code of Civil Procedure section 632, it fails to support this assertion with citation to the record. The trial was conducted over two days. However, the length of the reporter's transcript suggests it lasted less than eight hours. Olen has provided no evidence to the contrary. Therefore, the court was at liberty to rely on an oral statement of decision, which it did, addressing the pertinent factual and legal issues. (Code Civ. Proc., § 632; see *Estate of Smith* (1998) 61 Cal.App.4th 259, 268, fn. 5 [71 Cal.Rptr.2d 424].) We find no reversible error in the court's failure to issue a written statement of decision.

*Assessor Error in Date of Completion*

■ Olen contends the Assessor erroneously calculated the assessment based on an incorrect completion date. This issue was the subject of a stipulation at trial. The parties agreed the Assessor erred and the County issued a refund based on that error. This court need not address an issue on appeal that was the subject of a valid stipulation at trial. (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 420 [185 Cal.Rptr. 654, 650 P.2d 1171].)

*Mandatory Notice of Assessment Methodology*

Relying on *Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938 [237 Cal.Rptr. 191] (*Southern Pacific*), Olen contends the Assessor failed to provide sufficient notice of its use of the comparable sales method of valuation in advance of the hearing date. *Southern Pacific* involved an action for refund of property taxes before the State Board of Equalization. The appellate court acknowledged, "There is no explicit statutory requirement that the Board inform the taxpayer of its method or assessment prior to the reassessment hearing." (*Id.* at p. 948.) Nevertheless, the court concluded, "we hold that the right to notice of the Board's method of assessment is necessarily to be implied from the hearing rights granted by statute." (*Id.* at p. 950.)

The County argues *Southern Pacific* is inapplicable to county assessors or appeals boards. We need not make this determination. As the trial court noted, the hearing was continued from January 29, 2001 to April 2001 to provide Olen with additional time to receive the County's documentation on the comparable sales approach. Olen then received the Assessor's supporting documentation in March. Thus, although it is arguable Olen did not receive proper notice of the comparable sales method of valuation prior to the first appearance date, it is undisputed Olen received adequate notice and the Assessor's supporting documentation prior to the April continuation date. Further, Olen fails to explain how total reliance on the comparable sales method, and there is no evidence the Board did so, resulted in an erroneous assessment. Therefore, we find the delay in notice, if any, did not render the Board's findings unlawful or improper.

In a related argument, Olen states the Assessor failed to provide it with documents regarding the comparable analysis approach and thereby failed to comply with the Board's request. During the Board hearing, both parties repeatedly argued their respective requests for discovery from the other party were ignored. We are confident the parties' discovery disputes did not result in an unfair proceeding. Both sides were adequately prepared for the Board hearing, given ample time to present their respective cases, and to submit any relevant evidence.

*Double Taxation*

■ Olen argues it "has been forced to pay taxes on the same tenant improvements that its lessees . . . were also assessed on." "Double taxation occurs only when 'two taxes of the same character are imposed on the same property, for the same purpose, by the same taxing authority within the same jurisdiction during the same taxing period.' [Citation.]" (*Associated Home Builders Etc., Inc. v. City of Walnut Creek* (1971) 4 Cal.3d 633, 642 [94 Cal.Rptr. 630, 484 P.2d 606].) Olen submitted two exhibits in support of its double taxation claim. Exhibit 39 consisted of a photographic copy, for Ericsson, Inc., the tenant of 40 Pointe Drive, of a Business Property Statement, Form 571-L, for the years 1999 and 2000. Exhibit 40 is a photographic copy, for Avery Dennison Office Products Co., the tenant of 50 Pointe Drive, of a Business Property Statement, Form 571-L, for the years 1998 and 1999 and a similar form for 2000. These statements are reporting tools used in compliance with Revenue and Taxation Code section 441 et seq. They do not provide evidence of payment, nor do they provide information sufficient to prove Olen otherwise suffered double taxation.

## III

## DISPOSITION

The judgment is affirmed. Olen's motion to augment the record is granted as to appellant's opening trial brief and exhibits, respondent's response brief, and appellant's reply brief. It is denied as to the declaration of Thomas Pike. Each party to bear its own costs.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.