[Civ. No. 39878. First Dist., Div. Four. June 17, 1977.]

MILDRED S. MEYERS Individually and as Executrix,
etc., et al., Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

COUNSEL

Jay M. Jacobus for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and James F. May, Deputy County Counsel, for Defendants and Respondents.

OPINION .

**CHRISTIAN, J.**—Mildred S. Meyers and Jeannette B. Meyers, both individually and as executrices of the will of Edith M. Meyers, appeal from a judgment denying refund of taxes paid under protest (Rev. & Tax. Code, § 5140). The appeal challenges the method of valuation used by the Assessor of Alameda County in assessing certain property located in Union City.

The real property involved in this case consists of 21.47 acres of level, unimproved land located generally within the northwest quadrant of the intersection of Alvarado-Niles Boulevard and Decoto Road in Union City, zoned agricultural on the lien dates for 1973 and 1974.

Originally, the Meyers parcels consisted of approximately 33 acres zoned for public use. However, in 1969, under threat of condemnation, an 11-acre tract was sold to the City of Union City for about $20,000 an acre for park purposes. Also involved in the 1969 transaction was a tacit understanding that the remaining 21.47 acres would be zoned for commercial and multi-family residential uses. This agreement was carried out: In 1969, a 10-acre portion of the property was zoned community commercial and the remaining area was zoned "RM 1500" (multi-family residential). Appellants then entered into an option agreement to sell the property to a developer.

A nearby landowner whose property was being developed as a shopping center brought an action to invalidate the multi-residential and commercial zoning on appellants' land. This action was successful; the zoning on the Meyers property was set aside on March 14, 1972, by a decision of the Alameda County Superior Court because proper notice of the zoning hearing had not been given to the owners of the adjacent real property.

Shortly thereafter, on April 6, 1972, an amendment to the general plan of Union City was adopted, providing that the Meyers property was to remain as an "agriculturally zoned district in order for the City to

perform the specific planning programs and a cost benefit analysis that is beyond the scope of the General Plan at this time."

On February 5, 1973, appellants applied to the city council for rezoning of the property to commercial and multi-residential uses. The city council denied appellants' application, apparently on the ground that it would not be in the best interest of the city to approve another commercial site in the area.

For the tax year 1973-1974, the Meyers property was assessed as commercial property with a fair market value of $423,700. However, at the hearing before the assessment appeals board, the assessor somewhat modified his position, contending that the fair market value of the Meyers property was $309,000. How this figure was arrived at is not clear from the record. At the hearing, the county presented evidence of three transactions involving allegedly comparable land to support the contention that the *unrestricted* market value of the property was $31,800 per acre. This figure was then discounted by a factor representing the assessor's determination that commercial uses would be deferred for a period of five years. Roger Morgan, a witness for the county, stated that "The value has been conservatively estimated, therefore, on the basis of value as commercial land deferred at ten percent discount with a factor of .6209 for five years." The following was also stated with regard to what discount factor was applied:

"FREVOLA: What value then did you determine before you applied for the discount factor?

"MR. MORGAN: Thirty-one thousand, eight hundred dollars per acre on that—I applied the factor—factors to nineteen thousand, seven hundred and thirty-five per acre. Before the factor it was thirty-one thousand, eight and I factored it at the twenty-six, two-oh-nine, which brings it down to nineteen thousand, seven hundred and thirty-five per acre."

However, in its findings of fact and conclusions of law, the Assessment Appeals Board of Alameda County stated the following: "The unrestricted market value of $31,800 per acre shall be reduced by a factor of .4523% producing a fair market value of $309,000."

The appeals board accepted the assessor's appraisal that the property had an unrestricted market value of $31,800 per acre, applied a factor of

.4523 percent for deferred development anticipating that the zoning restriction. "will cease to exist within seven years," and accordingly reduced the assessed value.

Relying upon Revenue and Taxation Code section 402.1, appellants challenge the validity of the method of valuation used by the county assessor. Appellants contend that the assessor erred in considering as comparable, sales of land not similarly restricted. ■ When a taxpayer challenges the validity of the valuation method utilized by the assessor, a question of law is presented to the court and the court must determine whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354]; see also *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864, 878 [128 Cal.Rptr. 54].)

Section 401 of the Revenue and Taxation Code provides that: "Every assessor shall assess all property subject to general property taxation at 25 percent of its full value." (See Cal. Const., art. XIII, § 1.) Full cash value is defined in section 110: " 'Full cash value' or 'fair market value' means the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes."

Under Revenue and Taxation Code section 402.1, the assessor is required to consider the effect upon value of any enforceable restriction —such as zoning—to which the use of the land may be subjected. ■ Section 402.1 establishes a rebuttable presumption that the zoning restriction is permanent and that the value of the land is substantially equivalent to the value attributable to its legally permissible use or uses. The section provides in part as follows: "Grounds for rebutting the presumption may include but are not necessarily limited to the past history of like use restrictions in the jurisdiction in question and the similarity of sales prices for restricted and unrestricted land. The possible expiration of a restriction at a time certain shall not be conclusive evidence of the future removal or modification of the

restriction unless there is no opportunity or likelihood of the continuation or renewal of the restriction, or unless a necessary party to the restriction has indicated an intent to permit its expiration at that time."

The effect of the rebuttable presumption is to place upon the assessor the burden of proving the impermanence of the zoning restriction. To overcome the presumption, the assessor must show by a preponderance of the evidence that the restriction will be lifted in the predictable future.

The declared purpose of the Legislature in enacting the statute was "to provide for a method of determining whether a sufficient amount of representative sales information is available for land under use restriction in order to ensure the accurate assessment of such land" and "to avoid an assessment policy which, in the absence of special circumstances, considers uses for land which legally are not available to the owner and not contemplated by government, . . ." The statute is considered "necessary to implement the public policy of encouraging and maintaining effective land use planning." Section 402.1 is not to be construed, however, as requiring the assessment of any land at less than its full value or as prohibiting the use of representative comparable sales information on land under similar restrictions when such information is available. (See Rev. & Tax. Code, § 402.1.)

Appellants contend that respondents failed to rebut the presumption imposed by section 402.1, and that the agricultural zoning on the property is permanent (at least for the predictable future); if that argument is sound, the assessor should not have considered sales of otherwise comparable land which was not similarly restricted as to use.[1]

In order to overcome the presumption of permanence in the present case, the county assessor was required to prove by a preponderance of the evidence that the agricultural zoning of the Meyers property would be removed or substantially modified in the predictable future. This could be demonstrated by presenting, for instance, evidence that a pattern of rezoning has characterized the jurisdiction in question, or that historically similar zoning restrictions have been frequently avoided or circumvented. Also of relevance in rebutting the presumption created by section 402.1 is evidence of "the similarity of sales prices for restricted

---

[1] In this regard, section 402.1 provides: "In assessing land where the presumption is *unrebutted,* the assessor shall not consider sales of otherwise comparable land not similarly restricted as to use as indicative of value of land under restriction, unless the restrictions have a demonstrably minimal effect upon value." (Italics added.)

and unrestricted land." (See 1 Appendix to Sen. J. (1970 Reg. Sess.) Final Report of the Joint Com. on Open Space Land, p. 89.)

■ In this case, the assessor did not present any evidence that, in Union City, such zoning restrictions have been frequently avoided or circumvented, or that a pattern of rezoning has characterized the area. Although at least one nearby parcel is zoned commercial, the record does not disclose the character of its prior zoning. There is no evidence in this record of the zoning history of other parcels in the area such as would demonstrate a history of zoning instability in the area, and hence, a likelihood that the agricultural zoning restriction on the Meyers property will be removed in the predictable future.

The evidence in the record giving rise to the presumption of "no predictable removal" of the zoning restriction was the April 6, 1972, amendment to the Union City General Plan. The 1972 amendment, expressing the use contemplated by local government, provided that the Meyers parcel was to remain as an "agriculturally zoned district in order for the City to perform the specific planning programs and a cost benefit analysis that is beyond the scope of the General Plan at this time." Sometime thereafter, appellants filed an application with the city council of Union City, requesting an amendment to the master plan and requesting that the property be rezoned to provide for a combination of residential and commercial development; the application was rejected by a four-to-one vote of the city council on February 5, 1973.

The only evidence presented by the assessor at the hearing before the assessment appeals board was hearsay evidence to the effect that an assistant city planner had stated in a telephone conversation that he believed there was a strong likelihood that the parcel would be rezoned for commercial purposes within five years:

"[The Witness]: Mr. William Randolph of the Union City Planning Office confirmed in a phone conversation this past January 9th that there was a strong likelihood that this parcel will be rezoned commercial within five years, so he assesses the property toward the latter end rather than (unintelligible) under five years."

The record does not indicate the basis of the assistant planner's belief in this regard. No official statement from the city planner's office was introduced; neither was any statement from the city council offered.

The county contends that appellants also expressed a belief that the property would receive commercial or multi-residential zoning by 1980. The attorney for appellants did express a vague hope that the property would, in fact, be rezoned by 1980, but he also stated that he expected the city authorities to do nothing until a large neighboring area was successfully developed.

As noted above, section 402.1 expressly provides that the possible expiration of a zoning restriction at a time certain "shall not be conclusive evidence of the future removal or modification of the restriction unless there is no opportunity or likelihood of the continuation or renewal of the restriction, or unless a necessary party to the restriction has indicated an intent to permit its expiration at that time." The evidence presented by the assessor at the assessment appeals board hearing failed to establish that there was no opportunity or likelihood of the continuation or renewal of the restriction, or that a necessary party to the restriction (i.e., the city council) had indicated an intent to permit the expiration of the restriction at some certain time in the future. Therefore, upon this record, the assessor was precluded, under section 402.1, from considering "sales of otherwise comparable land not similarly restricted as to use" as indicative of the value of the agriculturally restricted Meyers property unless the agricultural restriction on appellants' property was shown to have "a demonstrably minimal effect upon value." (See Rev. & Tax. Code, § 402.1.) No such showing was made.

If the effect of section 402.1 were to require assessments of less than fair market value, constitutionality of the statute would be subject to challenge. (See *Lucas* v. *County of Monterey* (1977) 65 Cal.App.3d 947 [135 Cal.Rptr. 707]; see also 47 Ops.Cal.Atty.Gen. (1966) 171, 179.) ■ But the rebuttable presumption created by the statute is a reasonable method of regulating proof, and the exclusion from consideration of sales of property not similarly restricted is a standard which has a logical bearing on the issue of comparability. The enactment does not conflict with California Constitution, article XIII, section 1, requiring that all property be taxed in proportion to its value.

The judgment is reversed with directions to the trial court to order the matter resubmitted to the Assessment Appeals Board of the County of

Alameda for further consideration and action in accordance with the views expressed herein.

Rattigan, Acting P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied July 15, 1977, and respondents' petition for a hearing by the Supreme Court was denied August 11, 1977. Manuel, J., did not participate therein.

---

*Retired judge of the superior court sitting under assignment by the Acting Chairman of the Judicial Council.