[No. A042462. First Dist., Div. One. May 17, 1990.]

ARMAND BOREL, Plaintiff and Appellant, v.
COUNTY of CONTRA COSTA, Defendant and Respondent.

522

**COUNSEL**

Rosenblum, Parrish & Bacigalupi, Alfred Paul Paladino and Jeffrey H. Pierce for Plaintiff and Appellant.

Victor J. Westman, County Counsel, and Dennis C. Graves, Deputy County Counsel, for Defendant and Respondent.

OPINION

**HOLMDAHL, J.**[*]—Property owner challenges the method used to assess his property.

The judgment of the trial court is reversed, with directions to return the matter to the Assessment Appeals Board of Contra Costa County for further proceedings in accordance with this opinion.

### Statement of Facts and Procedural History

This case involves a dispute over the assessed value of a 17.234 acre parcel of land located within the City of Danville (hereafter, Danville). Appellant Armand Borel's family purchased the property in 1923.[1] The property is zoned for agricultural use (A-3), and is used for a walnut orchard. However, Danville's general plan designated the property for future zoning as AO—administrative offices.

Appellant's father, Joseph Borel, died on May 20, 1983. Joseph Borel bequeathed the property to appellant. The transfer of ownership triggered reassessment of the property for tax purposes. The property assessor for respondent County of Contra Costa (hereafter, County) assessed the value of the property at $5,880,600 for the 1984-1985 tax year. Prior to reassessment, the entire 42.412 acre parcel owned by Joseph Borel, was valued at $790,069. The assessor disregarded the agricultural zoning restriction, and valued the property based on its use for administrative offices.

Appellant paid the increased property tax under protest. On August 30, 1984, appellant sought a reduction of the assessed value of the property by filing an "Application for Changed Assessment" with County. On November 7, appellant asked Danville to designate the property an agricultural preserve, pursuant to the California Land Conservation Act of 1965 (the Williamson Act—Gov. Code, §§ 51200-51295). The Williamson Act provides for the creation of agricultural preserves by cities or counties. (Gov. Code, § 51230.) Appellant contended his property qualified for agricultural preserve status because it was located within a "scenic highway corridor." (Gov. Code, § 51205.1.)

County's assessment appeals board (hereafter, AAB), on October 3, 1985, held a hearing in response to appellant's application for changed assess-

---

[*] Assigned by the Chairperson of the Judicial Council.

[1] The parcel that is the subject of this action is actually a portion of 42.412 acres purchased by the Borel family in 1923.

ment. The AAB accepted the assessor's valuation method, but reduced the value of the property to $4,878,000.

On March 17, 1986, Danville denied appellant's application for agricultural preserve status.

On March 27, 1986, appellant challenged the action of the AAB by filing a complaint in Contra Costa County Superior Court. A stipulated judgment was entered in that action, returning the matter to the AAB for a rehearing.

The rehearing took place on May 7 and May 14, 1987. Witnesses for County testified that appellant's property was not eligible for agricultural preserve status, because the parcel was too small. The AAB again upheld the assessor's valuation method, and this time fixed the value of the property at $5,070,000. The AAB found that though the property was zoned A-3 ("heavy agriculture"), the zoning would be changed to AO ("Administrative Offices") "within the predictable future (e.g., within approximately 3 to 5 years)"[2] Further, the AAB concluded the property did not appear suitable for agricultural preserve status.

On July 22, 1987, appellant filed the instant action. Appellant alleged the assessor had used an improper valuation method, and that the AAB had erred in upholding the assessor's method. Following a brief court trial, in March, 1988, the trial court sustained the AAB's decision and findings, and entered judgment for County.

Appellant filed a notice of appeal on June 1, 1988.

According to appellant, on February 23, 1989, Danville reversed its earlier decision, and granted appellant's request for agricultural preserve status, for the 1989-1990 tax year forward (citing Danville Ord. No. 89-3). County confirms that Danville granted appellant's application. Appellant states he has paid the increased property taxes for every year in dispute (1984-1985 tax year through 1988-1989 tax year).

### DISCUSSION

▇ Appellant challenges the method used by County to value his property. He contends County erred by valuing his property by comparison to sales of nonagriculturally restricted property. Appellant's position rests on

---

[2] In fact, the property was rezoned in 1987 to provide for commercial and residential development.

his insistence that his request for agricultural preserve status precludes valuation of his property based on its use for commercial purposes.

The AAB's decision is analogous to the judgment of a trial court. (*Jones* v. *County of Los Angeles* (1981) 114 Cal.App.3d 999, 1003 [170 Cal.Rptr. 879].) ▮ When the taxpayer challenges the result reached by a sound valuation method, the substantial evidence standard of review applies. (*Id.* at p. 1004.) But, when the taxpayer challenges the method, manner, or technique of valuation, the reviewing court is presented with a question of law. (*Ibid.*; *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].)

Appellant is challenging the valuation method, thus, this case presents a legal question.

▮ Revenue and Tax Code section 402.5 provides that when valuing property by comparison with sales of other properties, the properties sold should be sufficiently similar to the property being valued in respect to, among other things, zoning.[3] Revenue and Tax Code section 402.1 provides that the assessor, when valuing property, must consider enforceable restrictions to which the use of the land may be subject, with zoning probably being the most familiar type of restriction. Section 402.1 establishes a rebuttable presumption that any enforceable restrictions are permanent, and that the value of the land is substantially equivalent to the value attributable to its permissible use or uses. (*Meyers* v. *County of Alameda* (1977) 70 Cal.App.3d 799, 804 [139 Cal.Rptr. 165].) In order to rebut this presumption, "the assessor must show by a preponderance of the evidence that the restriction will be lifted in the predictable future." (*Id.* at p. 805.)[4]

---

[3] Revenue and Tax Code section 402.5 provides, in relevant part: "When valuing property by comparison with sales of other properties, in order to be considered comparable, the sales shall be sufficiently near in time to the valuation date, and the properties sold shall be located sufficiently near the property being valued, and shall be sufficiently alike in respect to character, size, situation, usability, zoning or other legal restriction as to use unless rebutted pursuant to Section 402.1, to make it clear that the properties sold and the properties being valued are comparable in value and that the cash equivalent price realized for the properties sold may fairly be considered as shedding light on the value of the property being valued. . . ."

[4] Revenue and Tax Code section 402.1, as effective the date of the assessment, provided, in relevant part: "In the assessment of land, the assessor shall consider the effect upon value of any enforceable restrictions to which the use of the land may be subjected. Such restrictions shall include, but are not limited to: (a) zoning; . . . and (f) environmental constraints applied to the use of land pursuant to provisions of statutes. [¶] There shall be a rebuttable presumption that restrictions will not be removed or substantially modified in the predictable future and that they will substantially equate the value of the land to the value attributable to the legally permissible use or uses. [¶] Grounds for rebutting the presumption may include, but are not necessarily limited to, the past history of like use restrictions in the jurisdiction in question and the similarity of sales prices for restricted and unrestricted land. [¶] In assessing

On the valuation date in this case, May 20, 1983, appellant's property was zoned for heavy agriculture. Thus, the property had to be valued based on its use for agricultural purposes, unless the County could prove the existing zoning was going to change in the predictable future. In the hearing before the AAB, County successfully showed the property would be rezoned in the predictable future by introducing evidence of Danville's general plan, the history of surrounding pieces of land, and sales prices of surrounding pieces of land. Also important to County's case was Danville's insistence that the property did not qualify for agricultural preserve status under the Williamson Act.

■ The Williamson Act "is implemented by a city or county through the establishment of agricultural preserves consisting of agricultural and other vacant lands, and the execution of long term contracts with land owners who are willing to restrict the land uses of their property to agricultural and similar endeavors; thereafter, the lands must be assessed for city or county tax purposes according to the restricted land use, not necessarily the highest and best use. [Citations.]" *(Kelsey* v. *Colwell* (1973) 30 Cal.App.3d 590, 592 [106 Cal.Rptr. 420]; see also *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 850-851 [171 Cal.Rptr. 619, 623 P.2d 180].)[5]

Appellant believes his entitlement to agricultural preserve status is established by Government Code section 51205.1.[6] However, section 51205.1 is somewhat ambiguous. It could be interpreted to mean a city or county must offer a contract, but only after an agricultural preserve has been designated in a general plan. Before section 51205.1 was enacted, one appellate court held cities and counties were not required to establish agricultural preserves. *(Kelsey* v. *Colwell, supra,* 30 Cal.App.3d at p. 595.)

---

land with respect to which the presumption is unrebutted, the assessor shall not consider sales of otherwise comparable land not similarly restricted as to use as indicative of value of land under restriction, unless the restrictions have a demonstrably minimal effect upon value."

[5] Article XIII, section 8, of the California Constitution provides, in relevant part: "To promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses."

[6] Government Code section 51205.1 provides, in relevant part: "Notwithstanding any provisions of this chapter to the contrary, land within a scenic highway corridor, as defined in subdivision (i) of Section 51201, shall, upon the request of the owner, be included in an agricultural preserve pursuant to this chapter. When such land is included within an agricultural preserve, the city or county within which it is situated shall contract with the owner for the purpose of restricting the land to agricultural use . . . ."

Legislative history appears to show Government Code section 51205.1 requires a city or county to both establish a preserve and offer a contract, upon the request of the owner of property located within a scenic highway corridor without regard to the size of the parcel. "Under existing law, land within a scenic highway corridor *may* be included in an agricultural preserve and may be put under a contract at the discretion of the city or county. [¶] This bill would require a city or county to include land within a scenic highway corridor in a preserve, if an owner so requests, and require the city or county to offer the owner a contract." (Sen. Com. on Natural Resources and Wildlife, Analysis of Assem. Bill No. 1625 (1977-1978 Reg. Sess.) as amended June 22, 1978, italics in original.)

■■■ Though it does not explicitly embrace Danville's later decision to grant appellant's property agricultural preserve status, County, in its brief on appeal, does not dispute that Danville's original determination was wrong. Instead, County argues that since appellant had not applied for, let alone received, agricultural preserve status on the valuation date, its assessor properly valued the property based on its use for administrative offices.

County's argument is incongruous. Under County's argument, appellant would be prevented from showing he intended to maintain the agricultural use of the property for at least 10 years (Gov. Code, § 51244);[7] yet County would be allowed to show that, in the near future, the use of the property would be nonagricultural. In the instant case, every action taken by appellant indicated he intended to maintain the agricultural use of the property. He timely challenged the reassessment, and well before the first AAB hearing, he applied for agricultural preserve status. Since his property is located within a scenic highway corridor, Government Code section 51205.1 gave appellant control over the use of his property for the near future. It seems absurd to allow County to rebut the Revenue and Tax Code section 402.1 presumption, by predicting a future that accurate legal analysis on the part of Danville or County, at the time of the AAB hearing, would have shown was false.

County cites section 430.5 of the Revenue and Tax Code. That section provides: "No land shall be valued pursuant to this article unless an enforceable restriction meeting the requirements of Section 422 is signed, accepted and recorded on or before the lien date for the fiscal year to which the valuation would apply. To assure counties and cities time to meet the

---

[7] Government Code section 51244 provides for a minimum term of 10 years for an agricultural preserve contract. Contracts are automatically renewed annually for an additional year unless notice of nonrenewal is given by either party. (*Lewis* v. *City of Hayward* (1986) 177 Cal.App.3d 103, 109 [222 Cal.Rptr. 781].)

requirement of this section, the land which is to be subject to a contract shall have been included in a proposal to establish an agricultural preserve submitted to the planning commission or planning department, or the matter of accepting an open-space easement or scenic restriction shall have been referred to such commission or department on or before December 15 preceding the lien date to which the contract, easement or restriction is to apply."

This section precludes considering enforceable restrictions when valuing property, before those restrictions are in place. However, the point is not that appellant was entitled to agricultural preserve status on May 20, 1983, but that County could not overcome the Revenue and Tax Code section 402.1 presumption, given that appellant manifested no intent to have his property rezoned from agricultural use and his property was entitled to agricultural preserve status. In its brief on appeal, County constantly asserts the zoning of appellant's property would have been changed from agricultural use upon *appellant's* request. This assertion carries little weight when every action by appellant demonstrated a contrary desire.

At oral argument, County suggested that any overpayment of taxes resulted from Danville's erroneous rejection of appellant's request for agricultural preserve status. Therefore, according to County, appellant's remedy is to seek damages from Danville. This argument must be rejected because County relied on Danville's decision to overcome the section 402.1 presumption, and then collected the taxes. County should not benefit from Danville's error.

As appellant argues, and as noted in *Sierra Club* v. *City of Hayward, supra,* 28 Cal.3d at page 850, County's actions lead to a self-fulfilling prophecy. County increases the assessed value of appellant's property, based on its assessor's prediction of conversion of appellant's property to nonagricultural use. Significantly higher taxes are imposed, and appellant is forced to abandon his agricultural use of the property. In the present case, the assessor's prediction was wrong.

The judgment is reversed, with directions to the trial court to order the matter resubmitted to the AAB of County, for reassessment of the property, as of the valuation date, May 20, 1983, in accordance with its use for agricultural purposes. Appellant is entitled to a refund of any overpayment

of taxes caused by the incorrect assessment of his property, for the tax years in dispute (1984-1985 tax year through 1988-1989 tax year).

Racanelli, P. J., and Newsom, J., concurred.