Filed 1/17/14  Ferrell v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| DANA K. FERRELL,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D062892<br><br><br><br>(Super. Ct. No. 37-2011-00068636-CU-MC-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed and remanded with directions.

Niddrie, Fish & Addams and Michael H. Fish for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, Walter J. De Lorrell III and Timothy M. Barry, Deputy County Counsel, for Defendant and Respondent.

Dana K. Ferrell appeals from the trial court's judgment against him in a lawsuit against the County of San Diego (the County) brought pursuant to Revenue and Taxation Code section 5096 et seq. for a refund and adjustment of property tax assessed on an

approximate eight-acre lot that Ferrell owns in Lakeside.[1] Ferrell contends that the County Assessor (the Assessor) improperly valued the property by relying on comparable sales of properties that were zoned differently than the subject property. According to Ferrell, the County's Assessment Appeals Board (the Board) therefore committed legal error by accepting the Assessor's improper valuation. We conclude that the Assessor and the Board improperly relied on sales of properties with dissimilar zoning to the subject property. We accordingly reverse the judgment and direct the trial court to remand this matter to the Board for further proceedings.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Relevant Parcels*

Ferrell owns two contiguous parcels of real property in Lakeside that he bought in 1988.

Parcel No. 375-041-24-00 (Parcel 1) is an approximate eight-acre lot with no improvements. For $10,000 per month, Ferrell leases Parcel 1 to Waste Management to operate a green waste recycling facility. The green waste recycling facility operates with permission from the County pursuant to a minor use permit that Ferrell obtained in 2006.

Parcel No. 375-041-23-00 (Parcel 2) is an approximate eight-acre lot on which is located a single-family residence. According to documents in the record, the green waste

---

1    Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.

2

recycling facility was previously located on Parcel 2, but the County and Ferrell entered into a settlement agreement in 2004 requiring Ferrell to move the operation to Parcel 1. On Parcel 2, Ferrell stores heavy equipment that he rents to third parties.[2] Parcel 2 is the property at issue in this appeal.

As of 2009, both parcels were zoned A-70, which allows for residential and limited agricultural uses. Despite this zoning designation, the minor use permit allowed the green waste recycling operation on Parcel 1, and Ferrell stored heavy construction equipment on Parcel 2.[3]

---

[2] Ferrell argues in his appellate briefing that the presence of heavy equipment on Parcel 2 was not an illegal use because he was using it to grade the property rather than storing it for his equipment rental business. However, Ferrell ignores his own eventual admission at the administrative hearing that he makes a living by renting out the equipment stored on Parcel 2, even though he may have *also* used the equipment himself to grade the parcels.

[3] Ferrell has requested that we take judicial notice of the minor use permit. The County opposes the request on the basis that the permit was not in evidence before the Board. We deny the request for judicial notice. Our review focuses on whether the evidence before the Board supports its decision and whether the Board erred as a matter of law. (*Meyers v. County of Alameda* (1977) 70 Cal.App.3d 799, 804 (*Meyers*).) A document that was not before the Board is accordingly not relevant to our analysis. (See *Olen Commercial Realty Corp. v. County of Orange* (2005) 126 Cal.App.4th 1441, 1450 (*Olen*) [evidence that was not before the assessment appeals board is properly rejected on a motion to augment the appellate record].) Further, Ferrell refers to the minor use permit to establish that he was not permitted to operate the green waste recycling facility on Parcel 2, but the County no longer disputes that fact, which is established by the 2004 settlement agreement requiring Ferrell to move the facility from Parcel 2 to Parcel 1. For that reason as well, judicial notice of the minor use permit is unnecessary to our analysis. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

3

When Ferrell bought the parcels they were both located in a 100-year flood plain, which prevented them from being developed.[4] Ferrell is a general contractor, and over the years, he imported fill dirt and other fill material (the fill) to raise the elevation of the parcels so that they were no longer in a flood plain. Ferrell received a permit in 1997 for the addition of 106,600 cubic yards of fill to Parcel 1, and it is undisputed that Ferrell added a significant amount of fill to Parcel 2 as well.

On June 2009, Ferrell received a notice from the Assessor stating that Parcel 1 and Parcel 2 had been reappraised as of January 1, 2009,[5] because the addition of the fill to the parcels constituted unfinished construction that added $450,000 in additional value to each parcel. Before the reassessment, the assessed value was $233,156 for Parcel 1 and $568,316 for Parcel 2. After the reassessment added $450,000 to the land value of each parcel for the 2009 tax year, the parcels were valued at $687,819 for Parcel 1 and $1,029,681 for Parcel 2.

B.      *The Administrative Proceedings*

Ferrell filed administrative challenges to the reassessment of both parcels with the Board. The Board held a hearing on January 20, 2011, with Ferrell representing himself and the Assessor represented by staff appraisers. Both parties presented documentary evidence.

---

[4]     According to Ferrell, after the administrative proceedings at issue here, in 2011 Ferrell received a Letter of Map Revision from the United States Army Corps of Engineers stating that the parcels were no longer within the flood plain.

[5]     All tax liens attach annually on January 1. (§ 2192.)

4

At the hearing and in its written summary to the Board, the Assessor explained that the reassessment was based on the cost of adding 106,600 cubic yards of fill dirt to each parcel, according to a standard construction industry guide for estimating costs. The estimated volume of the fill added to the parcels was premised on a permit for 106,600 cubic yards of fill as stated in the 1997 permit for Parcel 1. Ferrell did not dispute the Assessor's calculation of the cost of the fill.

Instead, Ferrell argued to the Board that, in using the cost of the fill to arrive at the reassessed valuation of the parcels, the Assessor had assessed the parcels at an amount *above* the fair market value. To address that issue, both Ferrell and the Assessor presented their analyses of the fair market value of Parcel 1 and Parcel 2.

The Assessor explained that it had conducted an analysis of fair market value based on three comparable sales and had concluded that the reassessed value of both Parcel 1 and Parcel 2 was *below* fair market value. Specifically, the Assessor relied on three comparable sales of real properties that were zoned for commercial or industrial use.[6] After making adjustments to the three comparable sales, the Assessor arrived at a fair market value of between $809,015 and $1,016,908 for Parcel 1 and between $1,089,015 and $1,296,908 for Parcel 2.

---

6    The Assessor relied on sales of one property zoned C-36, one property zoned C-2, and one property zoned M-58. A document submitted by the County in the administrative record shows that C-36 zoning permits general commercial use, and M-58 zoning permits high-impact industrial use. The document does not describe C-2 zoning, but the parties appear to agree that it is a type of commercial zoning.

Ferrell argued that the Assessor's analysis was flawed because it relied exclusively on comparable sales of properties that were zoned for industrial or commercial use, whereas Parcel 1 and Parcel 2 were zoned A-70 for residential and limited agricultural use. Ferrell acknowledged that Parcel 1 and Parcel 2 might, in the future, be rezoned for commercial or industrial use, but he argued that until then, those parcels did not have the value that the Assessor had assigned to them.[7]

Ferrell submitted an appraisal that he obtained for Parcel 1 and Parcel 2, which relied on comparable sales of properties with the same or similar zoning as those parcels, and which arrived at a fair market value of $320,000 for Parcel 1 and $525,000 for Parcel 2. The appraisal report explained that it did not rely on comparable sales of industrially or commercially zoned properties because Parcel 1 and Parcel 2 were currently zoned for residential and limited agricultural use, with no guarantee that the zoning would change in the near future. Ferrell relied on the appraisal he submitted to argue that the Assessor's valuation of Parcel 1 and Parcel 2 was above fair market value,

---

[7]     In its trial court briefing, the County referred to the fact in August 2011 — several months after the Board's January 2011 hearing — the County amended its general plan and changed the zoning for Parcel 1 and Parcel 2 to allow industrial use. In its appellate brief the County refers us to Internet sites purportedly describing the current zoning of the parcels. That evidence is not in the record, and the County has not requested that we take judicial notice of it. Even if it had made such a request, we would not consider evidence of the current zoning designation for Parcel 1 and Parcel 2 because that evidence did not exist at the time of the Board's decision and is accordingly not relevant in deciding whether substantial evidence supports the Board's findings. (See *Olen*, *supra*, 126 Cal.App.4th at p. 1450.)

6

and he took the position that both Parcel 1 and Parcel 2 should be valued as they were in 2008, before the reassessment.[8]

The Assessor objected to the appraisal submitted by Ferrell because it appraised the parcels as of September 2009, not the January 2009 lien date, and one of the comparable sales occurred more than 90 days after the January 1, 2009 lien date. (See § 402.5 [requiring comparable sales for valuation purposes to be "near in time to the valuation date," which "does not include any sale more than 90 days after the lien date"].)

On March 30, 2011, the Board issued written findings and conclusions in which it denied Ferrell's application. The Board explained that although Ferrell contended that "the properties' market value is less than the assessed value as of the January 1, 2009 lien date," he "ha[d] not met his burden of proof to rebut that the Assessor's determination of value is correct." The Board concluded that "[t]he valuation by the Assessor using comparable sales of similar properties as the subject properties with the necessary adjustments show that the fair market value of both [Parcel 1 and Parcel 2] exceed the assessed value as of January 1, 2009."

More specifically, the Board accepted the fair market value set forth in the Assessor's analysis which relied on the three comparable sales of property zoned for industrial and commercial uses. It concluded that "[b]ased on the three comparables and

---

[8]    When questioned by Board members about his position, Ferrell seemed to concede that Parcel 1 should be assessed at a higher value than Parcel 2 because the minor use permit allowed the green waste recycling facility on Parcel 1, which was a type of commercial or industrial use of the property.

adjustments, the indicated value of [Parcel 1 and Parcel 2] as of January 1, 2009 are $900,000 and $1,100,000, respectively."  Addressing Ferrell's argument that the comparable sales used by the Assessor were not appropriate because the subject properties were zoned differently, the Board stated, "Although the comparables presented do not have the same zoning, the [A]ssessor considered, in addition to all other legally permissible information, representative sales of comparable lands that are not under restriction but upon which natural limitations have substantially the same effect as restrictions.  Specifically, lands that are similar to the land being valued in respect to legally permissible uses and physical attributes."[9]

C.    *Ferrell's Lawsuit*

On June 29, 2011, Ferrell filed a complaint against the County for refund and adjustment of tax pursuant to section 5096 et seq. to challenge the Assessor's reassessment of Parcel 1 and Parcel 2.[10]

The parties stipulated that the case would be decided by the trial court based on the briefs submitted by the parties and the administrative record.

Ferrell's briefing raised two arguments:  (1) that the addition of the fill did not constitute new construction, and thus reassessment was improper; and (2) as he had

---

[9]    This statement reflects language from section 402.1, subdivision (e), which — as we will explain below — applies only if the Assessor has rebutted the presumption that the current zoning of the property will continue into the predictable future.

[10]    The complaint also contained causes of action for unjust enrichment and declaratory relief, which Ferrell later dismissed.

8

argued before the Board, the Assessor improperly used comparable sales of properties with different zoning to establish the fair market value of both parcels. As part of that argument, Ferrell pointed out that the minor use permit for the green waste recycling facility did not support the use of comparable sales of industrially or commercially zoned properties for Parcel 2 because the green waste recycling facility was not permitted to operate on Parcel 2.

The trial court ruled in favor of the County. It rejected the argument that the addition of the fill did not constitute new construction. Further, although expressing concern on the issue, the trial court ruled that the Assessor properly used comparable sales of industrially and commercially zoned properties to determine the fair market value of Ferrell's property. The trial court stated, "The issue of concern to the Court is whether the assessment was based on uses for land which were not legally available to [Ferrell]. At the hearing, the Assessor presented 'comparable sales' which do not have the same zoning as [Ferrell's] parcels. . . . The Board's findings and conclusions relied, in part, on comparable sales." The trial court concluded, "Though the Court has reservations about the methodology used by the Assessor, the Court finds that 'special circumstances' exist to support the assessment; namely, [Ferrell's] 'actual use' of the parcels. . . . There is substantial evidence in the record . . . to support the assessment based on the 'cost approach method' and the 'comparable sales of similar properties.'"

Ferrell appeals from the judgment.

9

DISCUSSION

A.  *The Scope of Ferrell's Appeal*

Before the Board and the trial court, Ferrell challenged the reassessment as to *both* Parcel 1 *and* Parcel 2.  The scope of Ferrell's appeal is more limited, as it challenges the reassessment only as to Parcel 2.  Ferrell's principal argument is that the Assessor improperly used comparable sales of properties zoned for commercial and industrial use in arriving at the fair market value of Parcel 2 and that the Board therefore committed legal error by relying on the Assessor's flawed valuation analysis.[11]

B.  *Standard of Review*

"When the taxpayer challenges the result reached by a sound valuation method, the substantial evidence standard of review applies.  [Citation.]  But, when the taxpayer challenges the method, manner, or technique of valuation, the reviewing court is presented with a question of law . . . ," subject to de novo review.  (*Borel v. County of Contra Costa* (1990) 220 Cal.App.3d 521, 525.)  Where, as here, the issue is whether there was an "adequate comparison of useability between the properties" relied on by the

---

[11]  The County argues that by pursuing on appeal the argument that the Assessor improperly used comparable sales of properties zoned for industrial and commercial use, Ferrell is improperly advancing an argument that he did not make in the trial court.  The County's argument fails because in the trial court Ferrell *did* advance exactly the argument that he advances on appeal.  Although it was not his lead argument, Ferrell's brief in the trial court included an argument heading stating "The Comparable Sales Used By The County Were Improper," and both Ferrell and the County substantively discussed the issue.

Assessor and the Board for its fair market value analysis, "[t]his determination is a question of law."  (*Jones v. County of Los Angeles* (1981) 114 Cal.App.3d 999, 1005 (*Jones*).)  We must determine "whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law."  (*Meyers*, *supra*, 70 Cal.App.3d at p. 804.)  As a question of law is presented, we focus on the decision of the Board rather than that of the trial court.  (See *First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218, 225.)

C.     *Applicable Legal Standards*

In analyzing the merit of Ferrell's claim for a refund, we begin with an overview of the applicable legal standards.  "California Constitution, article XIII, section 1, provides that all property 'is taxable and shall be assessed at the same percentage of fair market value,' with certain exceptions not relevant here.  California Constitution, article XIIIA, section 1, places certain restrictions on the assessment of taxes on real property and does so by reference to the 'full cash value' of the property.  Section 2, subdivision (a) of article XIIIA defines 'full cash value' for properties purchased after 1975 . . . .  Where the full cash value is established upon purchase and sale of the property, the term 'full cash value' has the same meaning as fair market value measured at the date of such purchase.  [Citation.]  [¶]  Once established at the date of purchase, the 'full cash value' becomes the base value for purposes of ad valorem property taxation.  The base value can be raised in subsequent years to account for inflation, but only by a maximum of 2 percent per year."  (*Maples v. Kern County Assessment Appeals Bd.* (2002) 103 Cal.App.4th 172, 179-180.)

11

The Assessor may reassess the full cash value of a property when new construction occurs.  (Cal. Const., art. XIIIA, § 2, subd. (a); Cal. Code Regs., tit. 18, § 461, subd. (a).)  Although the Assessor may chose between several methods of determining value to arrive at the reassessed value,[12] the reassessed value must equal the fair market value.  (See *City and County of San Francisco v. County of San Mateo* (1995) 10 Cal.4th 554, 566 ["Under article XIIIA, the only time full cash value equals fair market value is in the year when real property subject to appraisal at fair market value is first purchased, newly constructed, or otherwise changes ownership."]; *Blackwell Homes v. County of Santa Clara* (1991) 226 Cal.App.3d 1009, 1013 [Proposition 13 "limit[s] full

_____

[12]     "The assessors have developed three basic methods for determining full cash value:  (1) the market data method . . . ; (2) the income method . . . ; and (3) the cost method . . . ."  (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 24, citations omitted; see Cal. Code Regs., tit. 18, §§ 4, 6 & 8.)  "The market approach looks at recent sales of comparable property, including that being valued; the income or discounted cash flow approach looks at the present value of a projected stream of income from use of the property; the cost approach looks at the cost of replacing the property, less accrued depreciation."  (*Watson Cogeneration Co. v. County of Los Angeles* (2002) 98 Cal.App.4th 1066, 1071, fn. 3.)  "[S]ince no one of these methods alone can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them" (*De Luz Homes, Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 564), but regardless of which method is applied, "[i]n valuing property, the assessor must adhere to the statutory standard of 'full cash value,' and must therefore estimate the price the property would bring on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other."  (*Id.* at p. 566; see also § 110, subd. (a) [" 'full cash value' or 'fair market value' means the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and of the enforceable restrictions upon those uses and purposes"].)

cash value to the lower of fair market value or the property's 'base year value'"].)  Thus, in this case, when the Assessor reassessed the full cash value of Parcel 2 due to Ferrell's new construction on the parcel, the reassessment was not permitted to exceed the fair market value of Parcel 2.  As we have discussed, the Assessor relied, in part, on comparable sales, to determine whether its valuation of Parcel 2 complied with that requirement.

The Legislature has specifically limited the type of comparable sales that an assessor may use to determine the value of real property.  "Under . . . section 402.1, the assessor is required to consider the effect upon value of any enforceable restriction — such as zoning — to which the use of the land may be subjected."  (*Meyers*, *supra*, 70 Cal.App.3d at p. 804.)  Specifically, section 402.1, subdivision (a) states that "[i]n the assessment of land, the assessor shall consider the effect upon value of any enforceable restrictions to which the use of the land may be subjected."  The statute lists "[z]oning" as one type of restriction that the assessor must consider.  (§ 402.1, subd. (a)(1).)

If the assessor nevertheless wishes to value the property as if it was not subject to a specific zoning restriction, it may attempt to rebut the presumption that the current zoning restrictions are permanent.  Section 402.1, subdivision (b) provides:  "There is a rebuttable presumption that restrictions will not be removed or substantially modified in the predictable future and that they will substantially equate the value of the land to the value attributable to the legally permissible use or uses."  "The effect of the rebuttable presumption is to place upon the assessor the burden of proving the impermanence of the zoning restriction."  (*Meyers*, *supra*, 70 Cal.App.3d at p. 805.)

The statute provides a nonexclusive list of grounds on which the assessor may rely to rebut the presumption that the current zoning will continue into the predictable future. "Grounds for rebutting the presumption may include, but are not necessarily limited to, the past history of like use restrictions in the jurisdiction in question and the similarity of sales prices for restricted and unrestricted land. The possible expiration of a restriction at a time certain shall not be conclusive evidence of the future removal or modification of the restriction unless there is no opportunity or likelihood of the continuation or renewal of the restriction, or unless a necessary party to the restriction has indicated an intent to permit its expiration at that time." (§ 402.1, subd. (c).)

If the assessor fails to carry its burden to rebut the presumption that the zoning restrictions will continue into the predictable future, the assessor is prohibited from arriving at a valuation by considering sales of properties that are not subject to similar zoning restrictions unless the assessor show that the restrictions have "a demonstrably minimal effect upon value." (§ 402.1, subd. (d).) The statute states, "In assessing land with respect to which the presumption is unrebutted, the assessor shall not consider sales of otherwise comparable land not similarly restricted as to use as indicative of value of land under restriction, unless the restrictions have a demonstrably minimal effect upon value." (*Ibid.*)

Section 402.5 underscores this restriction by providing that "[w]hen valuing property by comparison with sales of other properties, in order to be considered comparable, the sales shall be sufficiently near in time to the valuation date, and the properties sold shall be located sufficiently near the property being valued, and *shall be*

14

*sufficiently alike in respect to character, size, situation, usability, zoning or other legal restriction* as to use unless rebutted pursuant to Section 402.1, to make it clear that the properties sold and the properties being valued are comparable in value and that the cash equivalent price realized for the properties sold may fairly be considered as shedding light on the value of the property being valued." (*Ibid*.) "[S]ection 402.5 specifically mandates that when the 'comparable sales' method of valuation is used, the comparison land must be subject to the same use restrictions as the specific parcel in question." (*Jones*, *supra*, 114 Cal.App.3d at pp. 1004-1005.) "The purported use of the 'comparable sales' method based on sales of property which are not subject to the same limitation on use as the property in question is not a valid method of valuing the property."[13] (*Jones*, at p. 1006.)

Only if the assessor succeeds in rebutting the presumption that a zoning restriction will continue into the predictable future may it determine property value by relying on sales of properties that do not presently share a similar zoning restriction. "In assessing land under an enforceable use restriction wherein the presumption of no predictable removal or substantial modification of the restriction *has been rebutted*, but where the

---

[13] Ferrell points out the Board may have misunderstood the applicable legal standards because it stated "the subject properties are restricted by a governmental restriction *that may be considered* in valuing the subject property for property tax purposes . . . ."  As Ferrell points out, sections 402.1 and 402.5 *require* that zoning restrictions be taken into account unless the presumption of continued zoning is rebutted. It is unclear whether the Board's statement of the applicable legal standards impacted its conclusion.  Upon remand, the Board should properly apply the standards set forth in sections 402.1 and 402.5.

15

restriction nevertheless retains some future life and has some effect on present value, the assessor may consider, in addition to all other legally permissible information, representative sales of comparable lands that are not under restriction but upon which natural limitations have substantially the same effect as restrictions." (§ 402.1, subd. (e), italics added.)

The Legislature included an explanation of its intent in enacting section 402.1 within the text of the statute. That intent includes "avoid[ing] an assessment policy which, in the absence of special circumstances, considers uses for land that legally are not available to the owner and not contemplated by government." (§ 402.1, subd. (g).) The Legislature declared that the statute was "necessary to implement the public policy of encouraging and maintaining effective land use planning." (*Ibid.*)

D.      *The Assessor Did Not Rebut the Presumption That A-70 Zoning Would Continue into the Predictable Future*

Here, it is undisputed that the Assessor supported its valuation of Parcel 2 by relying on comparable sales from three properties zoned for commercial or industrial use. Unlike Parcel 2, which was zoned A-70, those three properties were not limited to agricultural or residential use.

Therefore, pursuant to the statutory provisions described above, the Assessor could properly consider the three comparable sales of properties that were zoned differently from Parcel 2 *only* if it either (1) established that the zoning restrictions on Parcel 2 had "a demonstrably minimal effect upon value" (§ 402.1, subd. (d)); or (2) rebutted the presumption that the zoning restrictions on Parcel 2 would continue into

16

the predictable future. (§§ 402.1, subds. (b)-(e), 402.5.) The County makes no argument that the zoning restrictions on Parcel 2 had a demonstrably minimal effect upon value.[14] Therefore, the sole issue is whether the Assessor rebutted the presumption that the zoning restrictions on Parcel 2 would continue into the predictable future.

Before we analyze the County's argument that the Assessor rebutted the presumption that A-70 zoning would continue for Parcel 2 into the predictable future, we pause to explain how the County's current justification for the Assessor's use of the differently zoned properties as comparable sales differs from the justification presented by the Assessor at the hearing before the Board. When making its presentation to the Board, the Assessor's main justification for using the three selected comparable sales of commercially and industrially zoned properties was the Assessor's assumption that the minor use permit allowed Ferrell to operate a green waste recycling facility on Parcel 2. The Assessor argued that the operation of the facility was a permitted commercial or

---

[14]    Indeed, the Assessor apparently believed that the zoning differences had more than a minimal effect upon value because the Assessor's appraisal valuation for Parcel 2 applied a downward adjustment to the sales price for the three comparable sales in an attempt to account for the differences in zoning.

We note that a downward adjustment of the comparable sales prices to account for different zoning does not cure the Assessor's otherwise improper reliance on comparable sales of differently zoned properties. Case law establishes that even if a downward adjustment is applied to account for different zoning restrictions, the assessor is not statutorily permitted to value a property by relying on the sale of properties that are not similarly restricted. (*Meyers*, *supra*, 70 Cal.App.3d at pp. 803-804 [the assessor and assessment appeals board impermissibly relied on sales properties of properties zoned differently from the subject property, even when those sales were discounted by a specific percentage to account for the differing uses].)

17

industrial use, allowing the comparison to the sale of other industrially and commercially zoned properties.

However, it is undisputed that the Assessor's assumption was wrong. Documents in the record — most notably a 2004 settlement agreement between Ferrell and the County — establish that the County allows operation of a green waste recycling facility only on Parcel 1. At the Board hearing, Ferrell corrected the Assessor's mistaken assumption about the scope of the minor use permit, and there is no indication in the Board's written decision that it based its decision on an assumption that the green waste recycling facility is permitted to operate on Parcel 2. The Board's decision noted Ferrell's position that the minor use permit applied only to Parcel 1.

In its appellate briefing, the County does not attempt to defend the Assessor's mistaken assumption that the minor use permit allows the green waste recycling facility to operate on Parcel 2. Instead, the County has changed course from the Assessor's approach, making an argument that was never raised by the Assessor during the Board hearing. Specifically, the County argues that pursuant to section 402.1, the Assessor satisfied its burden to rebut the presumption that A-70 zoning would continue into the predictable future and thus was permitted to rely on the comparable sales of industrially and commercially zoned properties. The County summarizes its argument by stating that "all the evidence before the [Board] — that Ferrell developed Parcel 2 for a commercial/industrial use, used Parcel 2 for such purposes, and anticipated a zoning change that would legalize use — rebuts the presumption that the agricultural zoning would continue into the predictable future."

18

The County has a difficult task in arguing that the Assessor rebutted the presumption, as we find no indication in the administrative record that the Assessor ever attempted to rebut the presumption or that the Assessor submitted any evidence on that subject.[15]

The County necessarily relies on evidence submitted by Ferrell, consisting of some of Ferrell's comments to the Board and statements in the appraisal submitted by Ferrell.

The appraisal that Ferrell submitted briefly mentioned a possible zoning change. The appraiser stated that "[t]he site . . . has the potential of being re-zoned to industrial use in 2010[,]" but commented that the zoning change was uncertain. According to the appraiser, "the County of San Diego is in the process of revising the general plan for the area which would change the existing zoning [for Parcel 1 and Parcel 2] from A70 to Medium Impact Industrial," and although "[t]he revised general plan is set to be voted on in late 2010[,] . . . adoption of the plan in not guaranteed[,]" and "there is considerable opposition to heavier uses in this area."

---

[15] Ferrell contends that the County may not rely on the theory that the Assessor rebutted the presumption that A-70 zoning would continue for Parcel 2, as the Board made no finding that the Assessor rebutted the presumption. The County responds that Ferrell may not — for the first time on appeal — raise the Board's lack of findings as a ground for rejecting the County's argument. We find it unnecessary to resolve this dispute. As we will explain, even were we to imply a finding by the Board that the Assessor rebutted the presumption that A-70 zoning for Parcel 2 would continue into the predictable future, substantial evidence in the administrative record does not support such a finding.

19

Ferrell stated in his comments to the Board that Parcel 1 and Parcel 2 are adjacent to other property that is zoned M-58 for industrial uses. Ferrell explained that he therefore inferred that if the zoning for Parcel 1 and Parcel 2 were to change, "I'll probably get like a designated zoning as I-54." Regarding the zoning change, a Board member asked Ferrell, "When do you hope to get that? If you get that?" Ferrell answered with a comment indicating he did not know when or if the zoning change would occur because it was a political decision. He stated, "Well can you tell me when the guys down at the end of the block here are going to say DPA 2020 is now accepted? That's the answer."

As we have explained, the applicable statute expressly provides that "[t]he possible expiration of a restriction at a time certain shall not be conclusive evidence of the future removal or modification of the restriction unless there is no opportunity or likelihood of the continuation or renewal of the restriction, or unless a necessary party to the restriction has indicated an intent to permit its expiration at that time." (§ 402.1, subd. (c).) The evidence before the Board showed no more than a *possible* change of the zoning for Parcel 2 in connection with an amendment to the general plan. Because it was only *possible* that the zoning change would occur, there was no conclusive evidence to rebut the presumption that A-70 zoning would continue, and the County failed to meet its burden.[16]

---

16    With respect to the lack of evidence of any definite zoning change occurring in the predictable future, this case is similar to *Meyers*, *supra*, 70 Cal.App.3d 799, which concluded that the assessor had failed to rebut the presumption that the present zoning

Perhaps because of the weak evidence in the administrative record regarding a possible zoning change, the County attempts to rely on evidence that was not before the Board to establish that the Assessor rebutted the presumption that A-70 zoning would continue for Parcel 2 into the predictable future. Specifically, the County informs us that "the parcels were in fact rezoned for industrial use in August of 2011." That evidence is not in the record, and we will not consider it. The rezoning occurred 26 months after the January 1, 2009 lien date, and the Board knew nothing of the rezoning because it occurred approximately six months after the Board's hearing. The Assessor cannot have met its burden to rebut the presumption with evidence that did not exist at the time. (See *Olen*, *supra*, 126 Cal.App.4th at p. 1450 [improper to augment record with evidence not before the assessment appeals board].) With hindsight, it is clear that the A-70 zoning restriction for Parcel 2 would change several months after the Board's decision, but at the time of the Board hearing, none of the evidence established that the zoning would change in the predictable future.

The County also attempts to defend the Assessor's use of comparable sales of commercially and industrially zoned properties by arguing that "[e]ven before the rezone . . . Ferrell used the parcels for commercial/industrial purposes[,]" namely, to rent and

---

would continue. In *Meyers*, "[t]he only evidence presented by the assessor at the hearing before the assessment appeals board was hearsay evidence to the effect that an assistant city planner had stated in a telephone conversation that he believed there was a strong likelihood that the parcel would be rezoned for commercial purposes within five year[s]." (*Id.* at p. 806.) "The record [did] not indicate the basis of the assistant planner's belief in this regard. No official statement from the city planner's office was introduced; neither was any statement from the city council offered." (*Id.* at p. 806.)

store heavy equipment. This is the theory that the trial court accepted, relying on the fact that Ferrell was already using Parcel 2 for commercial or industrial purposes even though that use was not allowed on a property restricted to A-70 zoning. We reject the County's argument because it is improper for the Assessor to base its valuation of Parcel 2 on the illegal use that Ferrell was making of that property. Property must be "valued at its highest and best use subject to the condition that the use be one which is *legally permissible*. . . . A use which is forbidden because of an enforceable restriction is generally not a use that is legally permissible." (*CAT Partnership v. County of Santa Cruz* (1998) 63 Cal.App.4th 1071, 1085-1086, citations & fn. omitted.)

In sum, because the County has failed to establish that the Assessor rebutted the presumption that the A-70 zoning would continue into the predictable future, there is no legal basis on which the Assessor could value Parcel 2 by relying on the comparable sales of properties zoned for commercial and industrial use. The Board therefore committed legal error — in violation of sections 402.1 and 402.5 — when it concluded that "[t]he valuation by the Assessor using comparable sales of similar properties as the subject propert[y] with the necessary adjustments show that the fair market value of . . . [Parcel 2] exceed[s] the assessed value as of January 1, 2009."

The proper disposition when the Board commits legal error in its valuation of a property is to vacate the Board's decision and remand the matter to the Board to correct its error and apply the proper legal standards. "'If the board has used an improper method of value or has failed to use proper criteria in valuing the property and there is no evidence or there is a conflict in the evidence from which a proper value can or should be

22

made, the trial court must remand the matter to the board for further proceedings.'"

(*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 25.)

"The Board is the constitutionally designated body entrusted with the duty of determining

the value of property for the purposes of tax assessment. [Citation.] Unless the amount

of tax is calculable as a matter of law, it is up to the Board to make that judgment. Not

us." (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 685 (*Farr*).)[17]

We therefore will reverse the trial court's judgment and direct that the matter be

remanded to the Board for further proceedings consistent with this opinion.

D.      *Ferrell's Request for an Award of Attorney Fees*

Ferrell argues that we should award him his attorney fees incurred in this action.

He relies on Government Code section 800, which provides, with an exception not

relevant here, "In any civil action to appeal or review the award, finding, or other

determination of any administrative proceeding under this code or under any other

provision of state law . . . , if it is shown that the award, finding, or other determination of

the proceeding *was the result of* arbitrary or capricious action or conduct by a public

entity or an officer thereof in his or her official capacity, the complainant if he or she

prevails in the civil action may collect from the public entity reasonable attorney's fees,

_____

[17]      Because we are remanding for the Board to apply the proper legal standards, we
need not and do not reach the County's argument that the appraisal submitted by Ferrell
did not support his opinion of the value of Parcel 2. That issue should be considered by
the Board on remand as part of determining whether Ferrell met his burden to establish
that the Assessor improperly valued Parcel 2. (See *Farr*, *supra*, 187 Cal.App.4th at
pp. 682-683 [when property is not an owner-occupied single-family dwelling, the burden
of proof is on the taxpayer to establish that the property was improperly assessed].)

computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), if he or she is personally obligated to pay the fees in addition to any other relief granted or other costs awarded." (*Ibid*, italics added.) "'The phrase "arbitrary or capricious" encompasses conduct not supported by a fair or substantial reason [citation], a stubborn insistence on following unauthorized conduct [citation], or a bad faith legal dispute . . . .'" (*Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 823.) "'"Attorney's fees may not be awarded [under Gov. Code, § 800] simply because the administrative entity or official's action was erroneous, even if it was 'clearly erroneous.'"'" (*Ibid*.)

Ferrell argues that the Assessor acted in an arbitrary and capricious manner during the hearing before the Board when it claimed that the minor use permit allowed Ferrell to operate the green waste recycling facility on Parcel 2. Ferrell contends that the County should have presented the permit to the Board, which would have shown that the green waste recycling facility was permitted to operate only on Parcel 1.[18]

We reject Ferrell's argument. According to our review of the administrative record, regardless of whether the Assessor acted in an arbitrary and capricious manner — which is an issue which we do not reach — there is no indication that the Board's decision *was a result of* the Assessor's mistaken assertion about the scope of the minor

---

[18] Ferrell did not raise the attorney fee issue in the trial court, and the County argues we should reject the request on that basis. However, for the sake of judicial efficiency we have chosen to exercise our discretion to address the merits as the issue can be addressed based solely on the content of the administrative record and does not require any development of the facts in the trial court.

24

use permit. Indeed, Ferrell corrected the Assessor's mistaken factual assertion during the hearing, and by the end of the hearing the Assessor seems to have accepted Ferrell's statement that the minor use permit was for green waste recycling on only one parcel.[19] Moreover, the Board's decision acknowledged Ferrell's statement that the minor use permit applied only to Parcel 1, and the Board expressed no reliance on the minor use permit when explaining why it accepted the Assessor's valuation of Parcel 2.

Based on these facts, we cannot conclude that the Board's decision "was the result of arbitrary or capricious action or conduct by" the Assessor in representing that the minor use permit applied to Parcel 2. (Gov. Code, § 800.)[20] Therefore, there is no basis for an award of attorney fees under Government Code section 800.

_____

[19] While summarizing her position, the appraiser representing the Assessor before the Board stated, "[H]e has not changed the zoning on the one. He does have a special use permit on the one, right? Correct?"

[20] For the first time in his reply brief, Ferrell sets forth an additional ground for his attorney fee request, namely that "the County contends the Assessment should be affirmed on the grounds that the Assessor rebutted the presumption of continued A-70 zoning," but "the Board made no such finding." Based on "'"[o]bvious considerations of fairness,"'" we will not consider an argument made for the first time in the reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

## DISPOSITION

The judgment is reversed with directions to the trial court to remand the matter to the Board for further proceedings consistent with this opinion.


_____
IRION, J.

WE CONCUR:


_____
BENKE, Acting P. J.


_____
McINTYRE, J.